# EXHIBIT 7

# GRANTOR TRUST AGREEMENT

creating

## CAPMARK MILITARY HOUSING TRUST XXXIII

by and between

### CAPMARK CAPITAL INC.,
as Depositor

and

### U.S. BANK NATIONAL ASSOCIATION,
as Grantor Trustee

authorizing

**Capmark Military Housing Trust XXXIII**
**Fort Lee Project Certificates**
**Series 2007A**

and

**Capmark Military Housing Trust XXXIII**
**Fort Lee Project Certificates**
**Series 2007B**

Dated as of August 31, 2007

4848-5123-8657.6

TABLE OF CONTENTS

Page

ARTICLE I

DEFINITIONS

Section 1.01.   Definitions ............................................................................................. 2
Section 1.02.   Rules of Construction ................................................................................ 8

ARTICLE II

CREATION OF TRUST

Section 2.01.   Appointment of Grantor Trustee ................................................................ 9
Section 2.02.   Deposit of Conveyed Property in Trust ...................................................... 9
Section 2.03.   Effect of Deposit of Conveyed Property with Grantor Trustee ................... 10
Section 2.04.   Rights of Capmark Capital, Credit Enhancer and Servicer ......................... 11
Section 2.05.   Declaration of Trust ................................................................................ 13
Section 2.06.   Powers .................................................................................................... 13
Section 2.07.   Liability of Depositor, Owners, Credit Enhancer and Grantor Trustee ........ 15
Section 2.08.   Title to Trust Estate ................................................................................ 15
Section 2.09.   Situs of Trust Estate ................................................................................ 15
Section 2.10.   Representations and Warranties of Depositor ............................................ 15
Section 2.11.   Delivery of Documents to Grantor Trustee ............................................... 17
Section 2.12.   Recording or Filing With Public Officials ................................................ 18
Section 2.13.   Retention of Documents by Grantor Trustee; Access by Owners ................ 18
Section 2.14.   Grantor Trust Provisions .......................................................................... 18
Section 2.15.   Characterization ...................................................................................... 19

ARTICLE III

CERTIFICATES

Section 3.01.   Authorization and Issuance of Certificates ............................................... 20
Section 3.02.   Authentication of Certificates .................................................................. 20
Section 3.03.   Registration, Transfer and Exchange of Certificates ................................. 21
Section 3.04.   Restrictions on Transfer .......................................................................... 22
Section 3.05.   Book-Entry Registration .......................................................................... 27
Section 3.06.   Mutilated, Destroyed, Lost or Stolen Certificates ..................................... 29
Section 3.07.   Persons Deemed Owners ......................................................................... 29
Section 3.08.   Access to List of Holders' Names and Addresses ...................................... 29
Section 3.09.   Terms of Certificates Binding ................................................................... 29
Section 3.10.   Interests in Registered Holder's Rights To Receive Payments .................... 30

Section 3.11.     Other Business Activities of Depositor, Grantor Trustee, Credit Enhancer, Servicer and Owners ........................................................................................ 30
Section 3.12.     Compliance With Law ...................................................................................... 30

## ARTICLE IV

### APPLICATION OF TRUST ESTATE; CERTAIN DUTIES OF GRANTOR TRUSTEE

Section 4.01.     Distribution of Payments Received ................................................................ 31
Section 4.02.     Payments to Owners Pursuant to Credit Enhancer Policy ............................. 32
Section 4.03.     Payments to Registered Holders ..................................................................... 33
Section 4.04.     Payments Do Not Make Recipient an Income Beneficiary ........................... 33
Section 4.05.     Payments From Trust Estate Only ................................................................. 34
Section 4.06.     No Segregation of Moneys; No Interest; No Derivatives; Investments ........ 34
Section 4.07.     Compliance With Withholding Requirements ............................................... 34
Section 4.08.     Excess Payments ............................................................................................ 35
Section 4.09.     Return of Payments ........................................................................................ 35
Section 4.10.     Payments Belonging to the Credit Enhancer ................................................. 35

## ARTICLE V

### AUTHORITY AND DUTIES OF GRANTOR TRUSTEE

Section 5.01.     General Authority ........................................................................................... 35
Section 5.02.     General Duties ................................................................................................ 35
Section 5.03.     Rights of Owners To Direct Grantor Trustee; Request For Instructions; Limitation on Directions and Instructions ..................................................... 36
Section 5.04.     Limitations on Acts of Grantor Trustee ......................................................... 38
Section 5.05.     Notices to Registered Holders ........................................................................ 39
Section 5.06.     Accounting and Reports to Registered Holders and Tax Authorities ............ 39
Section 5.07.     UCC Financing Statements ............................................................................ 40
Section 5.08.     No Duties Except as Specified in Trust Agreement, Directions or Instructions ................................................................................................. 40
Section 5.09.     Discharge of Liens ......................................................................................... 41
Section 5.10.     Grantor Trust Administration ......................................................................... 41

## ARTICLE VI

### CONCERNING THE GRANTOR TRUSTEE

Section 6.01.     Acceptance of Trusts and Duties .................................................................... 42
Section 6.02.     Representations and Warranties of Grantor Trustee ...................................... 43
Section 6.03.     Reliance; Advice of Counsel; Other Protections ........................................... 44
Section 6.04.     Not Acting in Individual Capacity ................................................................. 45
Section 6.05.     Compensation and Expenses .......................................................................... 45
Section 6.06.     Indemnification of Grantor Trustee ............................................................... 46

Section 6.07.  Resignation, Discharge or Removal of Grantor Trustee; Successor .............. 47
Section 6.08.  Appointment of Additional Grantor Trustees or Agents ............................... 48
Section 6.09.  Grantor Trustee May Enforce Claims Without Possession of Certificates .... 50
Section 6.10.  Grantor Trustee May Own Certificates ........................................................ 50
Section 6.11.  Not Responsible For Statements .................................................................. 50

ARTICLE VII

MISCELLANEOUS

Section 7.01.  Further Assurances ..................................................................................... 50
Section 7.02.  Amendment ................................................................................................. 51
Section 7.03.  Severability of Provisions ........................................................................... 53
Section 7.04.  Notices ....................................................................................................... 53
Section 7.05.  Term of Trust Agreement ........................................................................... 54
Section 7.06.  Nature of Interest in Trust Estate: Limitations on Rights of Others ............ 55
Section 7.07.  Disclaimers ................................................................................................. 56
Section 7.08.  Obligations Unconditional .......................................................................... 56
Section 7.09.  Entire Agreement ........................................................................................ 57
Section 7.10.  Conflict With Other Agreements ................................................................. 57
Section 7.11.  No Unintended Third Party Beneficiaries .................................................... 57
Section 7.12.  Limitations on Successors, Assigns and Transferees ................................... 57
Section 7.13.  Binding Effect ............................................................................................ 58
Section 7.14.  No Waiver ................................................................................................... 58
Section 7.15.  Remedies Cumulative ................................................................................. 58
Section 7.16.  Governing Law ........................................................................................... 58
Section 7.17.  Actions by Owners ...................................................................................... 58
Section 7.18.  Counterparts ............................................................................................... 59
Section 7.19.  Limitation on Rights of Owners .................................................................. 59
Section 7.20.  Certain Rights of the Credit Enhancer ........................................................ 59
Section 7.21.  Forum Selection; Jurisdiction; Venue; Choice of Law ................................ 60
Section 7.22.  Waiver of Trial by Jury ............................................................................... 60

EXHIBIT A-1  FORM OF SERIES 2007A CERTIFICATE
EXHIBIT A-2  FORM OF SERIES 2007B CERTIFICATE

## GRANTOR TRUST AGREEMENT

**This Grantor Trust Agreement** (this "Trust Agreement") is dated as of August 31, 2007 and is by and between **CAPMARK CAPITAL INC.**, a Colorado corporation, as Depositor ("Depositor"), and **U.S. BANK NATIONAL ASSOCIATION**, as trustee hereunder (in such capacity, together with its successors in such capacity, the "Grantor Trustee").

## <u>RECITALS</u>

A.      Pursuant to the terms of the Loan Agreement dated as of August 31, 2007 (as amended, restated and/or supplemented from time to time, the "Loan Agreement") between the Depositor, as Lender, and Fort Lee Commonwealth Communities, LLC, a Delaware limited liability company, as Borrower (the "Borrower") and the other Loan Documents (as defined in the Loan Agreement), the Depositor has made a loan in the aggregate original amount of $126,348,000 which on the date hereof is evidenced in the aggregate by the Series A Note and the Series B Note, each as hereinafter defined (such loan as more fully described in the Loan Agreement, the "Loan"), to the Borrower in connection with the financing of a military housing project at Fort Lee in Prince George County, Virginia.

B.      The Loan is being serviced by Capmark Finance Inc. (together with its successors and assigns, "Capmark Finance") pursuant to the Servicing and Lockbox Agreement dated as of August 31, 2007 (as amended, restated and/or supplemented from time to time, the "Servicing Agreement") among the Depositor, as Lender, the Borrower and Capmark Finance, as Servicer.

C.      Certain Operating Income (as defined in the Loan Agreement), and certain other moneys relating to the Project will be deposited with and disbursed by the Servicer pursuant to the Servicing Agreement.

D.      In addition to the right to receive certain amounts relating to the Project deposited and applied in accordance with the terms of the Servicing Agreement, the Loan is secured, subject to the limitations contained therein, by certain Loan Documents (as defined in the Loan Agreement), and all other security referenced therein, including the Credit Enhancer Policy (as defined below) and the Liquidity Facility Agreement (as defined below).

E.      The Depositor intends to provide, as hereinafter set forth, for the sale, transfer, assignment, setting over and conveyance of the Conveyed Property (as defined below) to the Grantor Trustee for the purposes set forth in this Trust Agreement and for the delivery hereunder of Certificates in respect of the Trust Estate (as defined below), evidencing interests in the Trust Estate.

NOW, THEREFORE, in consideration of the foregoing premises, and for other good and valuable consideration, the adequacy, receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

4848-5123-8657.6

# ARTICLE I

# DEFINITIONS

**Section 1.01. Definitions.** For purposes of this Trust Agreement the following terms shall have the meanings set forth below. Other capitalized terms used but not defined herein have the meanings ascribed to them in the Loan Agreement, which meanings are incorporated herein by this reference.

"2007A Original Principal Amount" means (a) with respect to a Series 2007A Certificate or a Book-Entry Beneficial Interest in a Series 2007A Certificate, the initial principal balance of the Series A Note, *multiplied by* the Percentage Principal Ownership Interest Series 2007A of such Series 2007A Certificate or Book-Entry Beneficial Interest.

"2007B Original Principal Amount" means (a) with respect to a Series 2007B Certificate or a Book-Entry Beneficial Interest in a Series 2007B Certificate, the initial principal balance of the Series B Note, *multiplied by* the Percentage Principal Ownership Interest Series 2007B of such Series 2007B Certificate or Book-Entry Beneficial Interest.

"Account Control Agreements" shall mean any agreement executed by the Lender and/or the Servicer to perfect any of the Lender's security interests in the accounts created pursuant to the terms of the Servicing Agreement.

"Additional Permitted Indebtedness" has the meaning set forth in the Loan Agreement.

"Adverse Trust Event" has the meaning set forth in Section 5.10 hereof.

"Affiliates" has the meaning set forth in the Loan Agreement.

"Applicable Party" has the meaning set forth in Section 7.02(a) hereof.

"Assignment" shall have the meaning set forth in the definition of Reimbursement Agreement.

"Authorized Officer" means, with respect to an entity, the Chairman of the Board, the President, the Chief Operating Officer, the Secretary, the Treasurer, any Vice President, or any Assistant Vice President thereof.

"Benefit Plan" means an employee benefit plan (as defined in Section 3(3) of ERISA), whether or not such plan is subject to ERISA or Section 4975 of the Code (or comparable provisions of other applicable federal or state laws), a governmental plan (as defined in Section 3(32) of ERISA), a church plan (as defined in Section 3(33) of ERISA), or an individual retirement account or annuity (as defined in Section 408 of the Code and the Treasury Regulations promulgated thereunder).

"Benefit Plan Assets" means "plan assets" (as defined in 29 C.F.R. § 2510.3-101).

"Book-Entry Beneficial Interest" means the interest of a Book-Entry Beneficial Owner in a Certificate.

"Book-Entry Beneficial Owner" means, with respect to a Certificate registered in the name of Cede & Co., as nominee of the Depository, the Person who is the beneficial owner of such Certificate as reflected on the books of the Depository, on the books of a Depository Participant or on the books of an indirect participating brokerage firm for which a Depository Participant acts as agent.

"Borrower" has the meaning set forth in the recitals hereto.

"Capmark Capital" has the meaning set forth in Section 2.03(c) hereof.

"Capmark Capital Rights" has the meaning set forth in Section 2.04(a) hereof.

"Capmark Finance" has the meaning set forth in the recitals hereto.

"Certificate" means a Series 2007A Certificate or a Series 2007B Certificate as may be applicable.

"Certificates" means the Series 2007A Certificates and the Series 2007B Certificates, collectively.

"Code" means the Internal Revenue Code of 1986, as the same may be amended from time to time (or any successor statute thereto).

"Conveyed Documents" has the meaning set forth in Section 2.02(a) hereof.

"Conveyed Property" has the meaning set forth in Section 2.02(a) hereof.

"Credit Enhancement Agreement" means the Credit Enhancement Agreement between Capmark Capital Inc., the Servicer, the Grantor Trustee and the Credit Enhancer, dated as of August 31, 2007, as amended, restated and/or supplemented from time to time.

"Credit Enhancer" has the meaning set forth in the Credit Enhancement Agreement.

"Credit Enhancer Default" has the meaning set forth in the Credit Enhancement Agreement.

"Credit Enhancer Policy" has the meaning set forth in the Credit Enhancement Agreement.

"Credit Enhancer Premium" has the meaning set forth for "Credit Enhancer's Monthly Premium" in the Credit Enhancement Agreement with respect to the current Credit Enhancer, or means the monthly premium charged by any successor Credit Enhancer.

"Debt Service Payment Date" has the meaning set forth in the Servicing Agreement.

"Definitive Certificates" has the meaning set forth in Section 3.05 hereof.

"Depositor" means Capmark Capital Inc., a Colorado corporation, in its capacity as the Depositor hereunder, and its successors and assigns.

"Depository" means The Depository Trust Company, acting as securities depository for the Certificates, or any successor securities depository hereafter named.  The nominee of the initial Depository for purposes of registering the Certificates is Cede & Co.  The Depository shall at all times be a "clearing corporation" as defined in Section 8-102(3) of the Uniform Commercial Code of the State of New York and a "clearing agency" registered pursuant to the provisions of Section 17A of the Securities Exchange Act of 1934, as amended.

"Depository Participant" means a broker, dealer, bank, other financial institution or other Person for whom from time-to-time the Depository effects book-entry transfers and pledges of securities deposited with the Depository.

"ERISA" means the Employee Retirement Income Security Act of 1974, as amended from time to time, and the regulations promulgated and rules issued thereunder.

"Event of Default" has the meaning set forth in the Loan Agreement.

"Government" means the United States of America, acting through the Department of the Army (or by and through the Secretary of the Army).

"Government Agreements" has the meaning set forth in the Security Instrument.

"Grantor Trust Provisions" means Subpart E of Subchapter J and Section 7701 of the Code, and final Treasury Regulations, published rulings, notices and announcements, promulgated thereunder, as the foregoing may be in effect from time to time.

"Grantor Trustee" means, as of the date hereof, U.S. Bank National Association, in its capacity as trustee hereunder, including its successors in interest, until a successor shall have become Grantor Trustee pursuant to Section 6.07 hereof, and thereafter "Grantor Trustee" shall mean such successor.

"Ground Lease" has the meaning set forth in the Security Instrument.

"Indemnitor" has the meaning set forth in the Loan Agreement.

"Lender" has the meaning set forth in the Loan Agreement.

"Liquidity Facility Agreement" means, collectively, (i) the Surety Bond, dated August 31, 2007, issued by the Credit Enhancer relating to the Series A Note, which replaces in its entirety the Series A Liquidity Facility Agreement dated August 31, 2007 issued by Capmark Finance Inc.; and (ii) the Surety Bond, dated August 31, 2007, issued by the Credit Enhancer relating to the Series B Note, which replaces in its entirety the Series B Liquidity Facility Agreement dated August 31, 2007 issued by Capmark Finance Inc., each as defined in the Loan Agreement.

"Loan" has the meaning set forth in the recitals hereof.

"Loan Agreement" has the meaning set forth in the recitals hereto.

"Loan Documents" has the meaning set forth in the Loan Agreement.

"Majority of Owners" means Owners of a majority of the Percentage Principal Ownership Interests with respect to each affected series of Certificates; provided, however, that from and after the time no further distributions are to be made to the Registered Holders of the Series 2007A Certificates or the Series 2007B Certificates, as the case may be, pursuant to this Trust Agreement, Owners of such Series 2007A Certificates or Series 2007B Certificates, as applicable, shall be excluded from such calculations.

"Mortgaged Property" has the meaning set forth in the Security Instrument.

"Note" and "Notes" have the meaning set in the Loan Agreement.

"Opinion of Counsel" means a written opinion of counsel, who may be counsel for an Owner, the Depositor, the Lender, the Credit Enhancer or the Grantor Trustee, which opinion is reasonably acceptable in form and substance to (a) the Grantor Trustee and (b) if required to be rendered to the Depositor, the Depositor.

"Owner" means (a) so long as the Depository or a successor is acting as securities depository for the Certificates, a Book-Entry Beneficial Owner or (b) if there is no securities depository for the Certificates, the Registered Holder of a Certificate.

"Percentage Principal Ownership Interest" means any Percentage Principal Ownership Interest Series 2007A or Percentage Principal Ownership Interest Series 2007B.

"Percentage Principal Ownership Interest Series 2007A" means, with respect to any Owner of a Series 2007A Certificate, a percentage determined (a) so long as the Depository is acting as securities depository for the Series 2007A Certificates, by dividing the outstanding principal amount of the Book-Entry Beneficial Interest of such Owner by the outstanding principal amount of all the Series 2007A Book-Entry Beneficial Interests; or (b) if there is no securities depository for the Series 2007A Certificates, by dividing the outstanding principal amount of the Series 2007A Certificates registered in the name of such Owner by the total outstanding principal amount of all the Series 2007A Certificates; provided, however, that from and after the time no further distributions are to be made to the Registered Holders of the Series 2007A Certificates pursuant to this Trust Agreement, the Percentage Principal Ownership Interest Series 2007A shall be zero.

"Percentage Principal Ownership Interest Series 2007B" means, with respect to any Owner of a Series 2007B Certificate, a percentage determined (a) so long as the Depository is acting as securities depository for the Series 2007B Certificates, by dividing the outstanding principal amount of the Book-Entry Beneficial Interest of such Owner by the outstanding principal amount of all the Series 2007B Book-Entry Beneficial Interests; or (b) if there is no securities depository for the Series 2007B Certificates, by dividing the outstanding principal amount of the Series 2007B Certificates registered in the name of such Owner by the total outstanding principal amount of all the Series 2007B Certificates; provided, however, that from and after the time no further distributions are to be made to the Registered Holders of the Series

2007B Certificates pursuant to this Trust Agreement, the Percentage Principal Ownership Interest Series 2007B shall be zero.

"Person" has the meaning set forth in the Loan Agreement.

"Plan Asset Entity" means an entity whose underlying assets include Benefit Plan Assets by reason of the investment by any Benefit Plan, arrangement or account in such entity.

"Prepayment Amount" has the meaning set forth in the Series A Note or the Series B Note, as applicable.

"Project" has the meaning set forth in the Loan Agreement.

"Record Date" means (a) the last day of each calendar month, except that the first Record Date for the Certificates issued on the first date on which Certificates are issued hereunder shall be the date on which Certificates are first issued hereunder or (b) such other date as may be established by the Grantor Trustee pursuant to Section 3.05(c) hereof.

"Registered Holder" means the Person in whose name a Certificate is registered on the Registration Books.

"Registrar" means the Grantor Trustee, as Certificate registrar hereunder, or any successor.

"Registration Books" means the registration books maintained by the Registrar pursuant to Section 3.03 hereof.

"Regularly Scheduled Net Interest Payments" means the Series A Regularly Scheduled Net Interest Payments, and the Series B Regularly Scheduled Net Interest Payments, collectively.

"Regularly Scheduled Principal Payments" means the Series A Regularly Scheduled Principal Payments, and the Series B Regularly Scheduled Principal Payments, collectively.

"Reimbursement Agreement" means that certain Liquidity Facility Reimbursement Agreement from the Borrower to Capmark Finance Inc., as assigned to the Credit Enhancer on the date hereof pursuant to that certain Agreement Regarding Substitute Liquidity Facility and Assignment of Liquidity Facility Reimbursement Agreement (the "Assignment").

"Securities Act" means the Securities Act of 1933, as amended.

"Security Interest" means a security interest or other interest (whether pursuant to the Security Instrument, the Servicing Agreement or otherwise) securing the Trust Estate or any portion thereof.

"Security Instrument" has the meaning set forth in the Loan Agreement.

"Series 2007A Certificate" means one of the Capmark Military Housing Trust XXXIII Fort Lee Project Certificates Series 2007A, which represents an ownership interest in amounts

payable by the Borrower under the Series A Note; provided, however, that from and after the time no further distributions are to be made to the Registered Holders of the Series 2007A Certificates pursuant to this Trust Agreement, all references to such term shall be ineffective.

"Series 2007B Certificate" means one of the Capmark Military Housing Trust XXXIII Fort Lee Project Certificates Series 2007B, which represents an ownership interest in the amounts payable by the Borrower under the Series B Note; provided, however, that from and after the time no further distributions are to be made to the Registered Holders of the Series 2007B Certificates pursuant to this Trust Agreement, all references to such term shall be ineffective.

"Series A Note" means the Promissory Note (Fixed Rate) dated August 31, 2007 made by Borrower in favor of Lender pursuant to the Loan Agreement in the original principal amount of $121,131,000.

"Series B Note" means the Promissory Note (Fixed Rate) dated August 31, 2007 made by Borrower in favor of Lender pursuant to the Loan Agreement in the original principal amount of $5,217,000.

"Series A Regularly Scheduled Net Interest Payment" means the interest payable on the Series A Note on any Debt Service Payment Date as set forth on Schedule 2 to the Servicing Agreement less the Servicer's Regular Monthly Fee and the Credit Enhancer Premium allocable to such interest payment.

"Series B Regularly Scheduled Net Interest Payment" means the interest payable on the Series B Note on any Debt Service Payment Date as set forth on Schedule 3 to the Servicing Agreement less the Servicer's Regular Monthly Fee and the Credit Enhancer Premium allocable to such interest payment.

"Series A Regularly Scheduled Principal Payment" means scheduled principal payable on the Series A Note on any Debt Service Payment Date as set forth on Schedule 2 to the Servicing Agreement.

"Series B Regularly Scheduled Principal Payment" means scheduled principal payable on the Series B Note on any Debt Service Payment Date as set forth on Schedule 3 to the Servicing Agreement.

"Servicer" means Capmark Finance Inc., a California corporation, in its capacity as Servicer under the Servicing Agreement and its successors and assigns in such capacity.

"Servicer's Regular Monthly Fee" has the meaning set forth in the Servicing Agreement.

"Servicing Agreement" has the meaning set forth in the Recitals hereto.

"Terminating Grantor Trustee" has the meaning set forth in Section 6.07 hereof.

"Title Company" has the meaning set forth in the Loan Agreement.

"Title Policy" has the meaning set forth in the Loan Agreement.

"Transaction Documents" means, collectively, the Trust Agreement, the Liquidity Facility Agreement, the Servicing Agreement, the Security Instrument, and each of the Conveyed Documents, including the Credit Enhancer Policy.

"Transferor Certificate" has the meaning set forth in Section 3.04(b) hereof.

"Trust" means the trust created hereunder, which shall hereinafter be referred to as the "Capmark Military Housing Trust No. XXXIII."

"Trust Agreement" means this Grantor Trust Agreement, as it may be amended and supplemented from time to time.

"Trust Estate" means all right, title and interest of the Grantor Trustee in, to and under the Conveyed Property and any other property deposited with the Grantor Trustee from time to time by any party hereto or Owner or otherwise acquired by the Grantor Trustee, including without limitation, all distributions, payments or proceeds thereon or thereof.

"UCC Financing Statements" means the UCC financing statements described in Section 2.11(a) hereof.

**Section 1.02. Rules of Construction.**

(a)     As used in this Trust Agreement and in any certificate or other document made or delivered pursuant hereto, accounting terms not defined in this Trust Agreement or in any such certificate or other document, and accounting terms partly defined in this Trust Agreement or in any such certificate or other document, to the extent not defined, shall have the respective meanings given to them under generally accepted accounting principles. To the extent that the definitions of accounting terms in this Trust Agreement or in any such certificate or other document are inconsistent with the meanings of such terms under generally accepted accounting principles, the definitions contained in this Trust Agreement or in any such certificate or other document shall control.

(b)     The definitions contained in this Trust Agreement are applicable to the singular as well as the plural, the past, the present, the future, the active and the passive forms of such terms and to the masculine as well as the feminine and neuter genders of such terms.

(c)     Any agreement, instrument or statute defined or referred to herein or in any instrument or certificate delivered in connection herewith means such agreement, instrument or statute as from time to time amended, modified or supplemented and includes (in the case of agreements or instruments) references to all attachments thereto and instruments incorporated therein; references to a Person are also to its permitted successors and assigns.

(d)     The terms "hereof," "herein," "hereby," "hereof" or "hereunder," unless otherwise modified by more specific reference, shall refer to this Trust Agreement in its

entirety as amended from time to time. Unless otherwise indicated in context, the terms "Article," "Section" or "Exhibit" shall refer to an Article or Section of, or Exhibit to, this Trust Agreement. The headings of sections and paragraphs and the Table of Contents contained in this Trust Agreement are provided for convenience only. They form no part of this Trust Agreement and shall not affect its construction or interpretation.

## ARTICLE II

### CREATION OF TRUST

**Section 2.01. Appointment of Grantor Trustee.** Effective as of the date hereof, (a) the Depositor appoints U.S. Bank National Association as the Grantor Trustee and the Grantor Trustee shall have all the rights, powers and duties of the Grantor Trustee set forth herein, subject to the provisions hereof, and (b) the Grantor Trustee hereby accepts such appointment.

**Section 2.02. Deposit of Conveyed Property in Trust.**

(a)     The Depositor, concurrently with the execution and delivery of this Trust Agreement, does hereby sell, transfer, assign, set over and otherwise convey without recourse to the Grantor Trustee for the benefit of the Owners, and hereby deposits, and the Grantor Trustee hereby acknowledges receipt in trust from the Depositor of, all of Depositor's right, title and interest in, to and under the Loan, the Notes and the Loan Documents, the Government Agreements, the Credit Enhancement Agreement, the Credit Enhancer Policy, the Liquidity Facility Agreement and any other document, agreement or instrument relating to any of the foregoing which the Depositor has in its capacity as Lender under the Loan Documents (such documents, the "Conveyed Documents"), including, without limitation, the representations, warranties, covenants, agreements and indemnities of the Borrower, the Indemnitor, the Servicer, the Government and any other Person contained in the Conveyed Documents, subject only to the terms of this Trust Agreement (the right, title and interest assigned pursuant to this sentence are referred to herein as the "Conveyed Property").

(b)     The Grantor Trustee is authorized and directed to deliver any instrument or document necessary to effectuate the assignment of the Conveyed Property in subsection (a) of this Section hereof into its name and in its capacity as the Grantor Trustee hereunder and to obtain distributions thereon.

(c)     The assignment of the Conveyed Property in subsection (a) of this Section to the Grantor Trustee is made to the Grantor Trustee, for the benefit of the Grantor Trustee and the Owners, as provided herein, and each reference in this Trust Agreement to such assignment shall be construed accordingly.

(d)     The rights of the Owners shall be determined pursuant to this Trust Agreement.

(e)     The relationship among the Depositor, the Grantor Trustee, the Owners, and any other Person created by this Trust Agreement shall not constitute indebtedness for any purpose. The transaction described in subsection (a) of this Section is intended to

be a sale by the Depositor to the Grantor Trustee of all the Depositor's right, title and interest in, to and under the Conveyed Property, which it holds in its capacity as Lender. This Trust Agreement is expressly not intended to effect, and shall not be construed as effecting, a pledge of the Conveyed Property by the Depositor to secure a debt or other obligation of the Depositor. Upon becoming aware that the transaction described in subsection (a) of this Section is recharacterized as not a sale of the Conveyed Property, the Grantor Trustee shall (i) notify the Owners and (ii) to the extent consistent with this Trust Agreement, take such other reasonable actions as may be requested by the Owners to ensure that the interest in the Trust Estate created under this Trust Agreement will continue to be a first priority perfected "security interest" within the meaning of the applicable Uniform Commercial Code.

(f)     The assignment of the Conveyed Property contained herein is subject to the provisions of the Credit Enhancement Agreement.

**Section 2.03. Effect of Deposit of Conveyed Property with Grantor Trustee.**

(a)     From and after the date hereof, subject to the rights of the Credit Enhancer as set forth herein, in the Loan Documents and in the Credit Enhancement Agreement, (i) the Grantor Trustee shall be the owner of, and the Depositor shall not have any further obligations with respect to, the Conveyed Property; and (ii) the Grantor Trustee, solely in its capacity as Grantor Trustee hereunder and on behalf of and at the direction of the Owners as provided herein and in the Loan Agreement, shall be able to enforce the provisions of the Conveyed Documents, in the same manner and to the same extent as if named therein in the place of and instead of the Depositor in its capacity as Lender.

(b)     All the representations, warranties, covenants, agreements and indemnities of the Borrower, the Servicer, the Indemnitor, the Government and any other Person contained in the Conveyed Documents shall inure to the benefit of the Grantor Trustee, for the benefit of the Owners as provided herein (and, to the extent provided in Section 7.11 hereof and in the Credit Enhancement Agreement, the Credit Enhancer) in the same manner and with the same effect as they inured to the Depositor in its capacity as Lender prior to the assignment of the Conveyed Property pursuant to Section 2.02 hereof.

(c)     Neither Capmark Capital Inc. (together with its successors and assigns, "Capmark Capital") nor any of its Affiliates shall have any liability to the Grantor Trustee, the Owners, the Credit Enhancer or any other Person, and each of the Grantor Trustee, the Owners (by their acceptance of their Certificates or Book-Entry Beneficial Interests) and the Credit Enhancer (by its delivery of the Credit Enhancer Policy) waive any claim that any or all of them may have from time to time, arising out of, in connection with or related to the exercise of rights or the performance of obligations by or of Capmark Capital or any of its Affiliates with respect to the Capmark Capital Rights or otherwise with respect to any Additional Permitted Indebtedness, the removal of and appointment of a successor Servicer, or any action of the Depositor described in or permitted under Section 2.04 hereof, including, without limitation, the extension or failure to extend Additional Permitted Indebtedness, granting or withholding consent in

connection with Additional Permitted Indebtedness, receiving or providing notices or other communications in connection with Additional Permitted Indebtedness, assigning or transferring all or any portion of any Additional Permitted Indebtedness, removing or not removing the Servicer or any successor Servicer, appointing or not appointing a successor Servicer, or agreeing or consenting to, or not agreeing or consenting to, any amendment to any of the Conveyed Documents or the attachment of any additional Liens on, or the grant of additional security interests in, the Mortgaged Property relating to the Capmark Capital Rights; provided that such exercise of rights, performance of obligations or other actions described in this paragraph are in accordance with the terms of the Trust Agreement and the terms of the Conveyed Documents that may be applicable.

(d)     Nothing herein shall limit or restrict the rights or obligations of Capmark Capital or its affiliates as set forth in the Credit Enhancement Agreement.

(e)     Neither Capmark Capital nor any of its Affiliates shall have any obligation to offer to the Grantor Trustee on behalf of the Owners or to any Owner the opportunity to purchase an interest in, or a portion of, any Additional Permitted Indebtedness or any other loan made, originated or purchased by Capmark Capital or any of its Affiliates. If Capmark Capital or any of its Affiliates chooses to offer to Grantor Trustee on behalf of the Owners or any Owner the opportunity to purchase an interest in, or portion of, any Additional Permitted Indebtedness or any other loan made, originated or purchased by Capmark Capital or any of its Affiliates, such offer shall be at such purchase price and interest rate as the offeror chooses, in its sole and absolute discretion.

(f)     Neither the Grantor Trustee on behalf of the Owners nor any Owner shall have any obligation whatsoever to purchase from Capmark Capital or any of its Affiliates any interest in, or portion of, any Additional Permitted Indebtedness or any other loan made, originated or purchased by Capmark Capital or any of its Affiliates.

**Section 2.04.  Rights of Capmark Capital, Credit Enhancer and Servicer.**

(a)     Notwithstanding any other provision hereof or in any of the Loan Documents that may be interpreted to the contrary, the following rights are the rights of Capmark Capital in its individual capacity, and not as Lender under the Loan Documents, and thus, are not included in the assignment and conveyance pursuant to Section 2.02 hereof are held by Capmark Capital, and shall not be negatively affected or limited by such conveyance (the following rights, collectively, the "Capmark Capital Rights"):

(i)     Capmark Capital's rights with respect to Additional Permitted Indebtedness under Section 10.25 of the Loan Agreement, and pursuant to the terms hereof, including, but not limited to, the rights of Capmark Capital to deliver and receive notices and other communications, to grant or withhold consents, or to exercise discretion, with respect to Additional Permitted Indebtedness under the Loan Agreement; provided that Capmark Capital shall not exercise any of its rights with respect to such Additional Permitted Indebtedness in a manner that would require this Trust Agreement to be registered under the Investment Company Act of 1940, as amended;

(ii)     Capmark Capital's rights to remove the Servicer and appoint a successor Servicer pursuant to Section 9.05 of the Servicing Agreement unless a Servicer Default (as defined in the Servicing Agreement) has occurred in which case the Grantor Trustee shall, subject to the provisions of the Credit Enhancement Agreement, have such right;

(iii)    Capmark Capital's rights under the Loan Agreement to direct the Lender to execute such instruments or documents to or with respect to the Loan Documents, and take such actions, as Capmark Capital shall request (A) to the extent necessary to facilitate the issuance of Additional Permitted Indebtedness (as determined by Capmark Capital in good faith), to amend or consent to the amendment of any of the Conveyed Documents; (B) to the extent necessary to facilitate the issuance of Additional Permitted Indebtedness (as determined by Capmark Capital in good faith), to arrange for or consent to the attachment of additional liens on, and grant of additional security interests in, the Mortgaged Property; and (C) to prevent any amendment to any of the Conveyed Documents or the attachment of any additional liens on, or the grant of additional security interests in, the Mortgaged Property that Capmark Capital determines in good faith may (1) reduce the value of the Capmark Capital Rights with respect to Additional Permitted Indebtedness or (2) impede or interfere with Capmark Capital's exercise of its rights, or the performance of its obligations, with respect to Additional Permitted Indebtedness; and

(iv)     any other rights of Capmark Capital expressly reserved to Capmark Capital in its individual capacity pursuant to and with respect to the Conveyed Documents.

(b)     Notwithstanding any other provision hereof or in any of the Loan Documents that may be interpreted to the contrary, the rights of the Credit Enhancer shall not be negatively affected or limited by the conveyance pursuant to Section 2.02 hereof.

(c)     Notwithstanding any other provision hereof or in any of the Loan Documents that may be interpreted to the contrary, the rights of the Servicer shall not be negatively affected or limited by the conveyance pursuant to Section 2.02 hereof.

(d)     The Grantor Trustee, by accepting the assignment of the Conveyed Property pursuant to Section 2.02 hereof, agrees that it shall not have the authority to take any action with respect to (i) any amendment of or any consent to any amendment of any of the Conveyed Documents or (ii) the attachment of additional liens on, or the grant of any additional security interests in, the Mortgaged Property, unless and until (A) Capmark Capital has specifically agreed in writing that such action will not reduce the value of the Capmark Capital Rights or impede or interfere with Capmark Capital's exercise of such rights, or Capmark Capital's performance of its obligations with respect to the Capmark Capital Rights or (B) if Capmark Capital believes that any such action referred to in clause (i) and (ii) above would have the effect described in clause (A), Capmark Capital has specifically consented in writing to such action, which consent shall not be unreasonably withheld or delayed.

(e)     Notwithstanding anything to the contrary in this Section, neither the Credit Enhancer nor Capmark Capital shall have the authority to take any action with respect to the rights of the Credit Enhancer hereunder or the Capmark Capital Rights, as applicable, including, without limitation, any action in connection with Capmark Capital's exercise of its rights under subsection (a) of this Section with respect to amendments to Section 10.25 of the Loan Agreement, that would cause this Trust Agreement, the Trust Estate or the trust arrangement created hereunder to fail to be characterized for federal income tax purposes as an investment trust.

**Section 2.05.  Declaration of Trust**.

(a)     A trust is hereby created under the laws of the State of Colorado for the benefit of the Owners as their interests may appear.  The Grantor Trustee hereby declares that it will hold the Trust Estate upon the terms set forth herein.  It is the intention of the parties hereto that this Trust Agreement and the Trust Estate constitute a trust under the laws of the State of Colorado and that this Trust Agreement constitute the governing instrument thereof.   It is further the intention of the parties hereto that this Trust Agreement, the Trust Estate and the trust arrangement created hereunder constitutes a "grantor trust" for federal income tax purposes under the Code, and all parties hereto agree to treat the Trust Agreement, the Trust Estate, any distributions therefrom and the Certificates and Book-Entry Beneficial Interests consistently with such characterization.  The provisions of this Trust Agreement shall be interpreted consistently with such characterization.

(b)     This Trust Agreement and the Trust Estate may be referred to as the "Capmark Military Housing Trust XXXIII," in which name the Grantor Trustee solely in such capacity may conduct the activities permitted under this Trust Agreement and sue or be sued.

(c)     The office (and place of business and chief executive office) of the Grantor Trustee shall be at the address set forth in Section 7.04 hereof or at such other address as the Grantor Trustee may designate by notice to the Registered Holders.

**Section 2.06.  Powers**.

(a)     The Grantor Trustee in its capacity as grantor trustee hereunder shall not engage in any activities other than in connection with, or relating to, the following and other than those required or authorized by the terms of this Trust Agreement.  Notwithstanding anything contained herein to the contrary, the Grantor Trustee shall not have the authority to consummate any act that would cause this Trust Agreement, the Trust Estate or the trust arrangement created hereunder to fail to be characterized as an investment trust for federal income tax purposes.

(b)     Pursuant to this Trust Agreement, the Grantor Trustee may engage in the following activities:

(i)     to accept the Conveyed Property from the Depositor for deposit into the Trust Estate;

(ii)     to execute, issue and deliver the Certificates pursuant to the terms of this Trust Agreement;

(iii)     to execute and deliver documents, certificates, instruments and agreements, including but not limited to, mortgages, deeds of trust, other security instruments and UCC financing statements, relating to the transactions contemplated in connection with the transfer and acquisition of the Conveyed Property, in each case in the respective forms in which the same may be delivered by the Depositor to the Grantor Trustee from time to time for execution and delivery;

(iv)     to establish such trust accounts on its records in its discretion as it may deem desirable or appropriate for the deposit and disbursement of any moneys delivered to it hereunder;

(v)     to enter into, execute, deliver and perform its obligations under this Trust Agreement, the Credit Enhancement Agreement, the Liquidity Facility Agreement, and the Account Control Agreements, to the extent applicable;

(vi)     to distribute moneys received by the Grantor Trustee to the Registered Holders as provided herein;

(vii)     to take such action as is necessary or as is directed by the Credit Enhancer pursuant to the Credit Enhancement Agreement or the Owners pursuant to the provisions of this Trust Agreement to maintain and conserve the interest of the Grantor Trustee and the Owners in the Trust Estate, which action shall include pursuing such actions as are necessary to realize on a Security Interest;

(viii)     to hold, conserve, protect and distribute to the Registered Holders any portion of the Trust Estate in accordance with the terms hereof; and

(ix)     subject to the limitations set forth in this Trust Agreement, to engage in those activities that are necessary, suitable or convenient to accomplish the foregoing or are incidental thereto or connected therewith.

(c)     Notwithstanding anything herein to the contrary, the Grantor Trustee in its capacity as the Grantor Trustee hereunder is neither authorized nor empowered to engage in any activity other than exercising its rights, powers and authority and performing its obligations in accordance with the express provisions of this Section.  In no event shall the Grantor Trustee have any authority to assign, transfer, pledge, setoff, otherwise encumber or dispose of any of the Trust Estate, except as provided hereunder or as required by law.

(d)     The Grantor Trustee is hereby directed and authorized to execute and deliver the Credit Enhancement Agreement and the Account Control Agreements.  The Grantor Trustee has no responsibility for the accuracy, sufficiency or contents of such agreements, or any of the other Transaction Documents, or the validity or enforceability

of such agreements or any of the other Transaction Documents with respect to or against any person other than the Grantor Trustee.

**Section 2.07. Liability of Depositor, Owners, Credit Enhancer and Grantor Trustee**. To the fullest extent permitted by law and except as provided herein, none of the Depositor, any Owner, the Credit Enhancer or the Grantor Trustee shall have any personal liability for any liability or obligation of the Trust Estate for any losses, claims, damages, liabilities and expenses of the Trust Estate or arising in connection with this Trust Agreement. The Grantor Trustee shall not have any liability or obligation hereunder with respect to the Depositor, the Owners, the Credit Enhancer, or any other Person, except as otherwise expressly provided herein and in the Credit Enhancement Agreement.

**Section 2.08. Title to Trust Estate**. Until this Trust Agreement terminates pursuant to its terms, legal title to all of the Trust Estate shall be vested at all times in the name of the Grantor Trustee solely in its capacity as grantor trustee hereunder and for the benefit of itself and the Owners as provided herein.

**Section 2.09. Situs of Trust Estate**. The Trust Estate will be located and administered in the State of Washington.

**Section 2.10. Representations and Warranties of Depositor**. As of the date hereof, or such other date as is specified in this Section, the Depositor hereby represents and warrants to and for the benefit of the Grantor Trustee and the Owners that:

(a)     The Depositor is duly organized and validly existing as a corporation in good standing under the laws of the State of Colorado.

(b)     The Depositor has the power and authority to execute and deliver this Trust Agreement and to carry out its terms. The Depositor has full power and authority to assign the Conveyed Property to, and deposit the Conveyed Property with, the Grantor Trustee on behalf of the Owners pursuant to Section 2.02 hereof.

(c)     This Trust Agreement has been duly executed and delivered by the Depositor and constitutes a legal, valid and binding obligation of the Depositor enforceable in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization and similar laws relating to creditors' rights and subject to general principles of equity.

(d)     As of the date of the delivery of the Conveyed Property to the Grantor Trustee pursuant to Section 2.02(a) hereof, (i) the Depositor is duly authorized to sell and assign the Conveyed Property to the Grantor Trustee, (ii) immediately prior to such delivery, the Depositor owned the Conveyed Property free and clear of any lien, pledge, encumbrance or other security interest, and (iii) subject to any recharacterization of the transaction described in Section 2.02(a) hereof as not a sale as described in Section 2.02(e) hereof, upon the delivery of the Conveyed Property to the Grantor Trustee, subject to the rights of the Credit Enhancer, the Grantor Trustee for the benefit of the Owners will own the Conveyed Property free and clear of any lien, pledge, encumbrance or other security interest.

(e)     The execution, delivery and performance by the Depositor of this Trust Agreement (i) are within its corporate powers, have been duly authorized by all necessary corporate action and do not contravene the Depositor's articles of incorporation or bylaws or any law or legal or contractual restriction binding or affecting the Depositor, in either case, in any manner that would be materially adverse to the parties hereto or to the performance by the parties hereto of their respective obligations hereunder and (ii) do not result in or require the creation of any lien upon or with respect to the Conveyed Property except as provided herein.

(f)     No consent or approval of or filing with any Governmental Authority is required for the execution, delivery or performance by the Depositor of this Trust Agreement, except for such, if any, as has been duly obtained or accomplished and is in full force and effect.

(g)     The Loan is a whole loan and not a participation interest in another loan.

(h)     None of the rights of the Depositor under the Loan Documents or otherwise with respect to the Loan have been waived, modified, altered, satisfied, cancelled or subordinated and no instrument has been executed that would result in or cause any of the foregoing.  The Borrower has not been released, in whole or in part, from any of its obligations under the Loan Documents, the Mortgaged Property has not been released, in whole or in part from the Security Instrument, and no instrument has been executed that would result in or cause any of the foregoing.

(i)     No scheduled payment under the Note is past due.

(j)     No event has occurred that is, or with the passage of time, with notice or with expiration of any grace or cure period would constitute, (i) a monetary default, breach, violation or event of acceleration under the Loan Agreement, the Notes or the Security Instrument; or (ii) to the Depositor's knowledge, a non-monetary default, breach, violation or event of acceleration under the Loan Agreement, the Notes or the Security Instrument. No waiver of any of the foregoing has occurred.

(k)     The activities of the Depositor with respect to the origination of the Loan and, to the knowledge of the Depositor, the servicing activities of the Servicer with respect to the Loan, have complied with any and all material requirements of federal, state or local law applicable thereto and were in accordance with the customary military housing mortgage loan origination practices of the Depositor and the customary military housing mortgage loan servicing practices of the Servicer, respectively. No Person other than the Servicer has serviced the Loan.

(l)     To the extent required under applicable law and except where failure to be so qualified does not cause any of the Loan Documents to be unenforceable, the Depositor is qualified to transact and do business in the state (or states) in which the Mortgaged Property is located.

(m)     The assignment of the Security Instrument (which by its terms is also an assignment of the Assignment of Leases) by the Depositor to the Grantor Trustee has

been duly executed and delivered by the Depositor, is in recordable form and constitutes a legal, valid, and binding obligation of the Depositor enforceable in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization and similar laws relating to creditors' rights and subject to general principles of equity.

(n)     The Depositor is solvent and the conveyance of the Conveyed Property to the Grantor Trustee pursuant to this Trust Agreement will not cause the Depositor to become insolvent.

(o)     The conveyance of the Conveyed Property by the Depositor to the Grantor Trustee pursuant to this Trust Agreement is not intended by the Depositor to hinder, delay, or defraud any of its creditors.

(p)     The consideration received by the Depositor in exchange for the conveyance of the Conveyed Property by it to the Grantor Trustee pursuant to the Trust Agreement constitutes fair consideration and reasonably equivalent value for the Conveyed Property.

**Section 2.11.  Delivery of Documents to Grantor Trustee.**

(a)     The Depositor represents that it has delivered, or has caused to be delivered, to the Grantor Trustee, and, subject to Section 2.11(b) below, the Grantor Trustee confirms that it has received from the Depositor or others:  (i) the original Loan Documents, the Reimbursement Agreement and the Assignment; (ii) a copy of each of the Government Agreements (the originals of the Government Agreements being retained by the Borrower); (iii) original alonges in which the Depositor assigns to the Grantor Trustee the Series A Note and the Series B Note, solely in its capacity as Grantor Trustee hereunder and for the benefit of the Owners; (iv) the original Credit Enhancer Policy and Liquidity Facility Agreement; (v) a copy of the assignments evidencing the assignment of the Conveyed Property to the Grantor Trustee, solely in its capacity as grantor trustee hereunder and for the benefit of the Owners (the originals being recorded in the real property records of Prince George County, Virginia); (vi) copies of assignments of the UCC-1 financing statements described in clause (vii) below, filed in the States of Virginia and Delaware with respect to the Mortgaged Property assigning a security interest in the Conveyed Property from the Depositor to the Grantor Trustee, solely in its capacity as grantor trustee hereunder and for the benefit of the Owners; (vii) copies of UCC-1 financing statements filed in the States of Virginia and Delaware with respect to the security interests granted to the Lender by the Borrower in the Mortgaged Property pursuant to the Loan Documents; (viii) evidence that the Title Company has committed to issue an endorsement modifying the Title Policy to include the Grantor Trustee as an insured, solely in its capacity as grantor trustee hereunder; and (ix) evidence that the Depositor has provided all notices of such assignment required by any of the Loan Documents or the Government Documents.

(b)     In confirming its receipt of the documents and instruments described in Section 2.11(a) (collectively, the "Delivered Documents"), the Grantor Trustee is under no obligation to examine, review or evaluate any such Delivered Documents, other than

(i) to examine each document to determine whether it appears on its face (and by its title) to be a Delivered Document described in Section 2.11(a), and (ii) if Section 2.11(a) describes any such document as an original, to examine such Delivered Document to determine whether it appears on its face to be an original document. Whenever Section 2.11(a) indicates that a Delivered Document may be a copy, such document may be a photocopy, facsimile, or other reproduction. The Grantor Trustee shall be under no obligation to determine, and shall have no responsibility for (i) the accuracy, sufficiency or contents of any such Delivered Documents or the validity or enforceability of any such Delivered Documents with respect to or against any person other than the Grantor Trustee, (ii) the genuineness, due authorization or legal effectiveness of any signature or endorsement appearing thereon other than a signature or endorsement of the Grantor Trustee, or (iii) the actual filing, recordation or registration of any such Delivered Documents.

**Section 2.12. Recording or Filing With Public Officials.** The Title Company has represented to the Depositor that (a) the assignments referred to in Section 2.11(a)(v) hereof have been recorded with the appropriate public official(s) under the recording laws of the Commonwealth of Virginia and (b) the assignments of UCC-1 Financing Statements referred to in Section 2.11(a) hereof have been filed with the appropriate public official(s) under the Uniform Commercial Code(s) of the Commonwealth of Virginia, the State of Delaware and other jurisdictions in which such filing is appropriate. The Depositor has no responsibility for such representation by the Title Company and shall have no liability to the Owners, the Grantor Trustee, the Credit Enhancer, the Servicer or any other Person for any error or omission in the recordation or filing any assignment or any assignment of UCC-1 financing statements referred to in Section 2.11 hereof or any other document or instrument with respect to the assignment pursuant to Section 2.02 hereof.

**Section 2.13. Retention of Documents by Grantor Trustee; Access by Owners.** The Grantor Trustee shall (a) retain the documents described in Section 2.11 hereof for the benefit of the Owners; (b) permit any Owner, the Credit Enhancer, the Servicer and their duly authorized agents to review such documents at the Grantor Trustee's office at any time during regular business hours after reasonable notice; and (c) at the request of any Owner, the Credit Enhancer, the Servicer or any duly authorized agent of any Owner, the Credit Enhancer or the Servicer and upon payment of the reasonable costs of the Grantor Trustee related thereto, copy (and deliver such copies) or make available for copying, any or all of such documents to the Person requesting the same, in each case at such requesting party's expense.

**Section 2.14. Grantor Trust Provisions.** The Grantor Trustee, the Depositor, the Owners (by their acceptance of the Certificates and Book-Entry Beneficial Interests) and the Credit Enhancer (by its delivery of the Credit Enhancer Policy) each agree and acknowledge that this Trust Agreement and the Trust Estate are intended to qualify as an "investment trust" within the meaning of Treasury Regulation § 301.7701-4(c), and it is neither the purpose nor the intent of the parties hereto to create a partnership, joint venture or association taxable as a corporation between or among the Grantor Trustee, the Depositor, the Lender, the Credit Enhancer, the Servicer or any Owner. In furtherance of the foregoing, (a) the purpose of this Trust Agreement and the trust arrangement created hereunder shall be to protect and conserve the assets of the Trust Estate, and the Grantor Trustee shall not at any time engage in or carry on any kind of

business or any kind of commercial or investment activity on behalf of the Trust Estate in its capacity as the Grantor Trustee hereunder and (b) the Grantor Trustee (at the written direction of the Depositor and a Majority of Owners) and the agents of the Grantor Trustee, if any, shall take, or refrain from taking, all such action as is necessary to maintain the status of this Trust Agreement, the Trust Estate and the trust arrangement created hereunder as an "investment trust." Neither the Grantor Trustee nor the agents of the Grantor Trustee, if any, shall (i) acquire any assets or dispose of any portion of the Trust Estate other than pursuant to the specific provisions of this Trust Agreement, (ii) vary the investment of the Trust Estate within the meaning of Treasury Regulation § 301.7701-4(c), (iii) substitute new investments or reinvest so as to enable the Grantor Trustee to take advantage of variations in the market to improve the investment of any Owner or (iv) engage in any activity which may directly or indirectly, adversely affect the status of the Trust Agreement, the Trust Estate the trust arrangement created hereunder as an "investment trust." The Grantor Trustee shall not have any authority to manage, control, use, sell, dispose of or otherwise deal with any part of the Trust Estate except as required by the express terms of this Trust Agreement in accordance with the powers granted to or the authority conferred upon the Grantor Trustee pursuant to this Trust Agreement. The Grantor Trustee agrees that it shall not take any action that would result in the Trust Agreement, the Trust Estate the trust arrangement created hereunder failing to be characterized for federal income tax purposes as an investment trust. Notwithstanding any of the preceding terms to the contrary, the Grantor Trustee shall be authorized and permitted to take any action or engage in any activity that is expressly required or permitted by the terms of the Credit Enhancement Agreement or this Trust Agreement; provided, however, that the Grantor Trustee shall not be authorized or permitted to take any discretionary action or any action directed by the Owners to amend this Trust Agreement or the Loan Documents which would violate the provisions of this Section and shall not agree to any amendment to this Trust Agreement which would violate this Section. Prior to taking, or upon receipt of direction to take, any discretionary action or to enter into any amendment to this Trust Agreement or any Loan Documents, that it reasonably believes to be in violation of this Section, the Grantor Trustee shall be entitled to request, receive and rely conclusively upon an Opinion of Counsel to the affect that such action is not in violation of the terms or requirements of this Section.

**Section 2.15. Characterization.** The Owners acknowledge and agree to treat the Series 2007A Certificates, and the Book-Entry Beneficial Interests therein, as undivided interests in the Series A Note, and agree to treat the Series 2007B Certificates, and the Book-Entry Beneficial Interests therein, as undivided interests in the Series B Note, and agree to file all tax returns and reports in a manner consistent with the foregoing and the treatment of the Notes as indebtedness. The Depositor and the Grantor Trustee hereby agree to file all tax returns and associated forms and reports in a manner consistent with the sale of the Loan to the Grantor Trustee, the characterization of the Series 2007A Certificates and the Series 2007B Certificates and the Book-Entry Beneficial Interests as representing interests in the Series A Note and the Series B Note, respectively.

# ARTICLE III

## CERTIFICATES

**Section 3.01. Authorization and Issuance of Certificates.**

(a)     The interests of the Owners in the Trust Estate shall be evidenced by Certificates, which shall be entitled the "Capmark Military Housing Trust XXXIII Fort Lee Project Certificates, Series 2007A" and "Capmark Military Housing Trust XXXIII Fort Lee Project Certificates, Series 2007B."

(b)     Upon the contribution by the Depositor of the Conveyed Property to the Grantor Trustee and the execution and delivery of this Trust Agreement, the Grantor Trustee shall execute and deliver the Certificates to the initial Registered Holder(s) identified by the Depositor.

(c)     The Certificates are issuable in fully registered form.  Each Series 2007A Certificate shall be substantially in the form set forth in Exhibit A-1 to this Trust Agreement and each Series 2007B Certificate shall be substantially in the form set forth in Exhibit A-2 to this Trust Agreement; provided, however, that in accordance with Section 3.05 hereof beneficial ownership interests in the Certificates shall initially be held and transferred through the book-entry facilities of the Depository.  All Certificates may have set forth thereon such information, legends and text as may be necessary or appropriate to conform to any applicable rules and regulations of any Governmental Authority or any usage or requirement of law with respect thereto.  The Series 2007A Certificates and the Series 2007B Certificates shall be issued in minimum denominations of $100,000 in Original Principal Amount and in integral multiples of $1.00 in Original Principal Amount in excess thereof.  The Certificates in the aggregate shall represent the entire beneficial ownership interest in the Trust Estate.  The Certificates shall be executed by manual or facsimile signature of an Authorized Officer of the Grantor Trustee.  Certificates bearing the manual or facsimile signatures of individuals who were, at the time when such signatures shall have been affixed, authorized to sign, shall be duly authorized, validly issued and entitled to the benefits of this Trust Agreement, notwithstanding that such individuals or any of them shall have ceased to be so authorized prior to the authentication and delivery of such Certificates or did not hold such offices at the date of authentication and delivery of such Certificates. Upon issuance hereunder, the Certificates shall be deemed fully-paid and non-assessable.

**Section 3.02. Authentication of Certificates.**  No Certificate shall entitle its Registered Holder to any benefit under this Trust Agreement or be valid for any purpose unless there shall appear on such Certificate a certificate of authentication substantially in the form set forth in Exhibit A-1 or Exhibit A-2, as appropriate, executed by the Grantor Trustee by manual signature. Such authentication shall constitute conclusive evidence that such Certificate has been duly authenticated and delivered hereunder.   All Certificates shall be dated the date of their authentication.

**Section 3.03. Registration, Transfer and Exchange of Certificates.**

(a)     The Grantor Trustee is hereby appointed (and hereby agrees to act in accordance with the terms hereof) as Registrar for the purpose of registering Certificates and transfers and exchanges of Certificates as herein provided. The Registrar may appoint, by a written instrument delivered to the Depositor and the Credit Enhancer, any other bank or trust company to act as Registrar under such conditions as the predecessor Registrar may prescribe, provided that the predecessor Registrar shall not be relieved of any of its duties or responsibilities hereunder by reason of such appointment. If the Grantor Trustee resigns or is removed in accordance with the terms hereof, the successor Grantor Trustee shall immediately succeed to its predecessor's duties as Registrar.

(b)     The Registrar will maintain an office or agency in St. Paul, Minnesota at the address stated in Section 7.04 hereof where Certificates may be surrendered for registration of transfer or exchange. The Grantor Trustee will maintain an office in Seattle, Washington at the address stated in Section 7.04 hereof where notices and demands to or upon the Grantor Trustee in respect of this Trust Agreement may be served. At all times during the term of this Trust Agreement, Registration Books shall be maintained at the office of the Registrar in which, subject to such reasonable regulations as the Registrar may prescribe, the Registrar shall provide for the registration of Certificates and of transfers and exchanges of Certificates as herein provided. The Depositor shall have the right to inspect the Registration Books or to obtain a copy thereof at all reasonable times, and to rely conclusively upon a certificate of the Registrar as to the information set forth in the Registration Books.

(c)     Upon surrender for registration of transfer of any Certificate at the office or agency maintained pursuant to subsection (b) of this Section, and compliance with the restrictions on transfer set forth in Section 3.04 hereof, the Grantor Trustee shall execute, authenticate and deliver, in the name of the designated transferee or transferees, one or more new Certificates in authorized denominations of a like aggregate amount dated the date of authentication by the Grantor Trustee. At the option of an Owner thereof, Certificates may be exchanged for other Series 2007A Certificates or Series 2007B Certificates, as the case may be, of authorized denominations of a like series, aggregate amount and Percentage Principal Ownership Interest Series 2007A or Percentage Principal Ownership Interest Series 2007B, as applicable, upon surrender of the Certificates to be exchanged at the office or agency maintained pursuant to subsection (b) of this Section.

(d)     Every Certificate presented or surrendered for registration of transfer or exchange shall be accompanied by a written instrument of transfer in form satisfactory to the Grantor Trustee and duly executed by the Owner thereof or such Owner's attorney duly authorized in writing. Each Certificate surrendered for registration of transfer or exchange shall be cancelled and subsequently disposed of by the Grantor Trustee in accordance with its customary practice.

(e)     No service charge shall be made for any registration of transfer or exchange of Certificates, but the Grantor Trustee may require that the Owner requesting

such action pay a sum sufficient to cover any tax or governmental charge that may be imposed in connection with any transfer or exchange of Certificates.

**Section 3.04. Restrictions on Transfer.**

(a)  The Certificates have not been and will not be registered under the Securities Act and will not be listed on any exchange.  Notwithstanding any other provision hereof (except for any Certificates or Book-Entry Beneficial Interest acquired by the Depositor or any Affiliate of the Depositor, which are not subject to the restrictions on transfer set forth in this Section), no Certificate, Book-Entry Beneficial Interest or interest therein may be sold, assigned or transferred (for purposes of this Section, a "transfer") unless:

(i)  The transferred Certificate, Book-Entry Beneficial Interest or interest therein (A) is registered pursuant to the Securities Act or is exempt from the registration requirements of the Securities Act and (B) is registered or qualified, as appropriate, pursuant to applicable state securities laws or is exempt from registration or qualification pursuant to applicable state securities laws.

(ii)  After such transfer there will be no more than 100 beneficial owners of the Certificates within the meaning of Treasury Regulation § 1.7704-1(h) or within the meaning of the Investment Company Act of 1940, as amended.

(b)  Each investor that purchases a Certificate or Book-Entry Beneficial Interest (each an "Investor") will be deemed to have represented, warranted and agreed as follows:

(i)  It is a Qualified Institutional Buyer ("QIB") as defined in Rule 144A of the Securities Act and will provide evidence to such effect and has such knowledge and experience in financial and business matters as to be capable of evaluating the merits and risks of an investment in the Certificates.  It has sought such accounting, legal and tax advice as it has considered necessary to make an informed investment decision and the investor is able to bear the economic risks of such an investment for an indefinite period of time and can afford a complete loss of such investment.

(ii)  Such Investor is acquiring its Certificates for its own account for investment and with no present intention of selling or transferring the Certificates or any portion thereof in connection with any distribution thereof, in whole or in part or for the account of a QIB.

(iii)  Neither such Investor, nor anyone acting on its behalf, has:

(A)  offered, pledged, sold, disposed of or otherwise transferred the Certificates, any interest in the Certificates or any other similar security to any Person in any manner;

(B)     solicited any offer to buy or accepted a pledge, disposition or other transfer of the Certificates, any interest in the Certificates, or any other similar security from any Person in any manner;

(C)     otherwise approached or negotiated with respect to the Certificates, any interest in the Certificates or any other similar security with any Person in any manner;

(D)     made any general solicitation by means of general advertising or in any other manner; or

(E)     taken any other action, that (in the case of any of the acts described in clauses (A) through (D) above) would constitute a distribution of the Certificates under the Securities Act, would render the disposition of the Certificates a violation of Section 5 of the Securities Act or any state securities law, or would require registration or qualification of the Certificates pursuant thereto. It will not act, nor has it authorized, or will it authorize, any Person to act, in any manner set forth in the foregoing sentence with respect to the Certificates, any security issued in exchange therefor or in lieu thereof or any interest in the foregoing (but without prejudice to its right at all times to sell or otherwise dispose of the Certificates in accordance with the requirements of this Trust Agreement).

(iv)     Such Investor understands that (i) none of the Conveyed Documents or Certificates has been or will be registered under the Securities Act or registered or qualified under any applicable state securities laws and are being sold in reliance on exemptions from the registration requirements of the Securities Act and any such laws for nonpublic offerings, (ii) notwithstanding any provision hereof to the contrary, the Certificates or any security issued in exchange therefor or in lieu thereof may be transferred only (A) if registered pursuant to the Securities Act or is exempt from the registration requirements of the Securities Act, and (B) if registered or qualified, as appropriate, applicable state securities laws or is exempt from registration or qualification, as appropriate, pursuant to applicable state securities laws.

(v)     Such Investor has reviewed and understands the restrictions on transfer of the Certificates and acknowledges that such transfer restrictions may adversely affect the liquidity of the Certificates.

(vi)     Such Investor understands that each purchaser of a Certificate, by virtue of its acceptance thereof, assents to, and agrees to be bound by, the terms, provisions and conditions of this Trust Agreement.

(vii)    Such Investor will not transfer any Certificate except in accordance with applicable law, the above described transfer restrictions and such other terms, provisions and conditions of this Trust Agreement as may be applicable thereto.

(viii)   Such Investor acknowledges that it has been afforded an opportunity to request and review, and it has received, all additional information considered by it to be necessary to verify the accuracy of or to supplement the information herein.

(ix)     Such Investor is duly authorized to purchase the Certificates and to accept its obligations under this Trust Agreement, and its purchase of investments having the characteristics of such Certificates is authorized under, and not directly or indirectly in contravention of, any law, charter, trust instrument or other operative document, investment guidelines or list of permissible or impermissible investments applicable to the Investor.

(x)      If such Investor is acquiring any Certificates as a fiduciary or agent for one or more accounts, such Investor represents that it has sole investment discretion with respect to each such account and that it has full power to make the foregoing acknowledgments, representations, warranties and agreements with respect to each such account.

(xi)     Such Investor understands and acknowledges that the Certificates are being offered for sale in transactions not requiring registration under the Securities Act or any other securities laws, which are limited to sales to QIBs, that the Certificates have not been registered under the Securities Act or any other applicable securities laws and, unless so registered, may not be offered, sold or otherwise transferred except in compliance with the registration requirements of the Securities Act and any other applicable securities laws, pursuant to an exemption therefrom or in a transaction not subject thereto under Rule 144A and in each case in compliance with the conditions for transfer set forth herein.

(xii)    Such Investor understands that there may be restrictions on the ability of certain investors, including, without limitation, depository institutions, either to purchase the Certificates or to purchase investments having characteristics similar to those of the Certificates or representing more than a specified percentage of the Investor's assets.  The Investor has consulted, and relied on the advice of, the Investor's legal advisor in determining whether and to what extent the Certificates constitute a legal investment for such Investor.

(xiii)   Such Investor is not relying upon the Depositor, the Grantor Trustee, the Credit Enhancer, the Lender, the Servicer, the Borrower, the Government or any of their Affiliates or employees for advice as to the merits and risks of an investment in the Certificates and it has sought such accounting, legal and tax advice as it has considered necessary to make an informed investment decision.

(xiv)   Such Investor has conducted its own independent examination of, and had an opportunity to ask questions and receive answers concerning, the Certificates, the Trust Estate, the Loan (including, without limitation, the security therefor), the other Conveyed Documents, the transactions and documents related to the foregoing or contemplated thereby, the Depositor, the Grantor Trustee, the Credit Enhancer, the Lender, the Servicer, the Borrower, the Government or any of their Affiliates or employees and all matters related thereto it has requested.

(xv)   Such Investor has been furnished all documents and information regarding the Certificates, the Trust Estate, the Loan (including, without limitation, the security therefor), the Conveyed Documents, the transactions and documents related to the foregoing or contemplated thereby, the Depositor, the Grantor Trustee, the Credit Enhancer, the Lender, the Servicer, the Borrower, the Government or any of their Affiliates or employees and all matters related thereto that it has requested.   Such Investor recognizes that an investment in the Certificates involves significant risks.

(xvi)   Such Investor understands that there is no established market for the Certificates and that none will develop and, accordingly, it must bear the economic risk of an investment in the Certificates for an indefinite period of time.

(xvii)   Such Investor agrees that it is bound by and will abide by the provisions of this Trust Agreement and the restrictions noted on the face of the Certificates.

(xviii)   It either:

(A)   is not a Benefit Plan or a Plan Asset Entity and is not acquiring the Certificate, Book-Entry Beneficial Interest or interest therein directly or indirectly for, or on behalf of, a Benefit Plan, a Plan Asset Entity or any entity whose underlying assets are deemed to be Benefit Plan Assets; or

(B)   is a Benefit Plan or a Plan Asset Entity or is acquiring the Certificate, Book-Entry Beneficial Interest or interest therein directly or indirectly for or on behalf of a Benefit Plan, a Plan Asset Entity or any entity whose underlying assets are deemed to be Benefit Plan Assets; the acquisition and holding of the Certificate, Book Entry Beneficial Interest or interest therein is permissible under applicable law and will not result in any non exempt prohibited transaction under Section 406 of ERISA or Section 4975 of the Code or similar law; and recognizes and agrees that the Grantor Trustee has specifically disclaimed any obligation (including, without limitation, any obligation or duty as a fiduciary with investment

discretion under ERISA or Section 4975 of the Code over any Benefit Plan Assets) not affirmatively undertaken in writing pursuant to this Grantor Trust Agreement.

(c)    Any Owner desiring to effect a transfer and such Owner's prospective transferee shall each certify to the Grantor Trustee and the Depositor in writing the facts surrounding the transfer in substantially the form set forth in Exhibit B (the "Transferor Certificate").

(d)    The Depositor shall provide to the Grantor Trustee, and the Grantor Trustee shall deliver to any Owner of a Certificate or Book-Entry Beneficial Interest and any prospective transferee designated by any such Owner, upon such Owner's request, information regarding the Certificates, the Book-Entry Beneficial Interests and the Conveyed Property and such other information as shall be necessary to satisfy the condition to eligibility set forth in Rule 144A(d)(4) for transfer of any such Certificate or Book-Entry Beneficial Interest and such other information as shall be necessary to satisfy the condition to eligibility set forth in Rule 144A(d)(4) for transfer of any such Certificate or Book-Entry Beneficial Interest without registration thereof under the Securities Act pursuant to the registration exemption provided by Rule 144A.  The Grantor Trustee shall not be under any obligation to determine the sufficiency of such information possessed by the Depositor, and the Grantor Trustee shall be entitled to include a disclaimer in any such delivery to the effect that such information has not been prepared by the Grantor Trustee and the Grantor Trustee is not responsible for its accuracy or completeness.

(e)    Each transferor, by making a transfer, and each transferee, by accepting a transfer, of a Certificate, Book-Entry Beneficial Interest or interest therein shall be deemed to have covenanted for the benefit of the Depositor, the Grantor Trustee and the other Owners that the restrictions on transfer set forth in this Section have been satisfied.

(f)    The Grantor Trustee shall prior to registering a transfer in the Registration Books request that the Depositor make an inquiry to the Depository as to the number of Book-Entry Beneficial Owners of the Certificates and notify the Grantor Trustee of the results of such enquiry for the purpose of determining whether the restriction described in subsection (a)(ii) above has been violated; and the Depositor shall promptly after receiving such request make such inquiry and direct the Grantor Trustee in writing whether or not to accept such transfer for purposes of such subsection (a)(ii).

(g)    No purported transfer of any interest in any Certificate or Book-Entry Beneficial Interest or any portion thereof or interest therein that is not made in accordance with this Section shall be given effect by or be binding upon the Grantor Trustee or the Depositor, and any such purported transfer shall be null and void *ab initio* and vest in the transferee no rights against the Grantor Trustee, the Depositor, the other Owners or the Trust Estate (in which case the such interest in the Certificate or Book-Entry Beneficial Interest as the case may be shall be deemed to remain and vest in the immediately preceding Owner).  The Owner of any Certificate or Book-Entry Beneficial

Interest or interest therein that is subsequently deemed to constitute a Benefit Plan Asset shall promptly dispose of such Certificate, Book-Entry Beneficial Interest or interest therein if a transfer of such Certificate, Book-Entry Beneficial Interest or interest therein to such Owner would be prohibited under this Section.

(h)     The preparation and delivery of the certificates and opinions referred to in this Section shall not be an expense of the Trust Estate, the Grantor Trustee or the Depositor.

(i)     Notwithstanding any term herein contained to the contrary, neither the Grantor Trustee nor the Registrar shall be under any obligation to determine or monitor whether any transfer or exchange of any Certificate complies with the Securities Act, or any other state securities laws that may be applicable, ERISA, the Investment Company Act, the Code or other applicable restrictions set forth herein; provided, however, that if a certificate or opinion is specifically required by the express terms of this Section to be delivered to the Grantor Trustee or the Registrar prior to registration of a transfer, the Grantor Trustee or the Registrar, as the case may be shall be under a duty to receive the same, and to examine it to determine whether it conforms on its face with the applicable requirements of this Section.   Without limiting the generality of the foregoing, the Grantor Trustee shall be under no obligation to determine or monitor compliance with the limitation set forth in Section 3.04(a)(ii), other than, upon any proposed transfer, to request the Depositor to make the inquiry to the Depository described in Section 3.04(f) hereof.

(j)     Each Owner of a Certificate or Book-Entry Beneficial Interest desiring to affect such a transfer shall, and does hereby agree to, indemnify the Trust Estate, the Grantor Trustee, the Servicer, the Lender, the Depositor and the other Owners against any liability that may result if the transfer is not so exempt or is not made in accordance with federal and state securities laws, or otherwise fails to comply with the transfer restrictions imposed by this Section.

**Section 3.05.  Book-Entry Registration.**

(a)     Notwithstanding any other provision hereof, except as otherwise provided in this Section:  (i) the Certificates shall be delivered only in book-entry form registered in the name of Cede & Co., as nominee of the Depository; (ii) all amounts to be paid to the Owners pursuant to Article IV hereof shall be paid by wire transfer to the Depository; and (iii) all notices, filings, other communications and information to be delivered to the Owners pursuant any other provision hereof shall be delivered to the Depository.

(b)     Book-Entry Beneficial Owners shall hold and transfer their respective interests in, to and under Certificates through the book-entry facilities of the Depository and, except as provided in subsection (d) of this Section, shall not be entitled to definitive, fully registered Certificates ("Definitive Certificates") in respect of Book-Entry Beneficial Interests.  The Grantor Trustee shall not have any responsibility to monitor, maintain records concerning (or determine compliance with any of the restrictions on transfer set forth herein with respect to) or otherwise restrict the transfer of

Book-Entry Beneficial Interests. All transfers by Book-Entry Beneficial Owners of their respective Book-Entry Beneficial Interests shall be made in accordance with the procedures established by the Depository Participant or brokerage firm representing such Book-Entry Beneficial Owner. Each Depository Participant shall only transfer the Book-Entry Beneficial Interests of Book-Entry Beneficial Owners it represents or of brokerage firms for which it acts as agent in accordance with the Depository's normal procedures. The Grantor Trustee shall not have any duty to monitor, maintain records concerning (or determine compliance with any of the restrictions on transfer set forth herein with respect to) Book-Entry Beneficial Owners or Book-Entry Beneficial Interests.

(c)     The Grantor Trustee, the Depositor and the Registrar may for all purposes, including, without limitation, the making of payments due on the Certificates, deal with the Depository as the authorized representative of the Owners with respect to such Certificates for the purposes of exercising the rights of Owners hereunder. The rights of Owners with respect to the Certificates shall be limited to those established by law and agreements between such Owners and the Depository Participants and brokerage firms representing such Owners. Multiple requests and directions from, and votes of, the Depository as Owner of the Certificates with respect to any particular matter shall not be deemed inconsistent if they are made with respect to different Owners. The Grantor Trustee may establish a reasonable record date in connection with solicitations of consents from or voting by Owners and shall give notice to the Depository of such record date.

(d)     If (i)(A) the Depositor advises the Grantor Trustee and the Registrar in writing that the Depository is no longer willing or able to properly discharge its responsibilities with respect to the Certificates, and (B) the Depositor is unable to locate a qualified successor, or (ii) the Depositor at its option advises the Grantor Trustee and the Registrar in writing that it elects to terminate the book-entry system through the Depository, the Grantor Trustee shall notify all Owners, through the Depository, of the occurrence of any such event and of the availability of Definitive Certificates to Owners requesting the same. Upon surrender to the Registrar of the Certificates by the Depository, accompanied by registration instructions from the Depository for registration of transfer and any other documents necessary to satisfy the requirements of any applicable transfer restrictions, the Grantor Trustee shall execute, and the Registrar shall authenticate and deliver, the applicable Definitive Certificates to the Owners identified in such instructions. The Depositor, the Servicer, the Grantor Trustee, the Registrar and the Credit Enhancer each may conclusively rely on, and shall be protected in relying on, such instructions. None of the Depositor, the Servicer, the Grantor Trustee, the Registrar or the Credit Enhancer shall have any liability to the Depository, Cede & Co., any substitute securities depository, any Person in whose name the Certificates are reregistered at the direction of any substitute securities depository, any Book-Entry Beneficial Owner or any other Person for (i) any determination made pursuant to this subsection or (ii) any action taken to implement such determination and the procedures related thereto that is taken pursuant to any direction of or in reliance on any information provided by the Depository, Cede & Co., any substitute securities depository or any Person in whose name the Certificates are reregistered. Upon the issuance of Definitive Certificates for purposes of evidencing ownership of the Certificates held in Book-Entry form, the registered holders

of such Definitive Certificates shall be recognized as Registered Holders hereunder and, accordingly, shall be entitled directly to receive payments on, to exercise voting rights with respect to, and to transfer and exchange such Definitive Certificates.

**Section 3.06.  Mutilated, Destroyed, Lost or Stolen Certificates**.  If (a) any mutilated Certificate is surrendered to the Registrar or the Grantor Trustee, and the Registrar or the Grantor Trustee receive evidence to their satisfaction of the destruction, loss or theft of the Certificate, and (b) there is delivered to the Registrar and the Grantor Trustee such security or indemnity as may be required by them to save each of them harmless, then, in the absence of notice to the Registrar or the Grantor Trustee that the Certificate has been acquired by a bona fide purchaser, the Grantor Trustee shall execute and the Grantor Trustee or the Registrar shall authenticate and deliver, in exchange for or in lieu of any such mutilated, destroyed, lost or stolen Certificate, a new Series 2007A Certificate or Series 2007B Certificate, of like series, tenor and Percentage Principal Ownership Interest Series 2007A or Percentage Principal Ownership Interest Series 2007B, as may be applicable, but bearing a number not contemporaneously outstanding.  Upon the issuance of any new Certificate under this Section, the Grantor Trustee may require that the Owner requesting such action pay a sum sufficient to cover any tax or other governmental charge that may be imposed in connection with any transfer or exchange of the Certificate and any other reasonable expenses (including the reasonable fees and expenses of the Grantor Trustee and the Registrar) connected therewith.  Any duplicate Certificate issued pursuant to this Section shall constitute complete and indefeasible evidence of ownership in the Trust Estate, as if originally issued, whether or not the lost, stolen or destroyed Certificate shall be found at any time.  In the event any such Certificate shall have matured, instead of issuing a replacement Certificate as provided above, the Grantor Trustee may pay the same upon receipt by the Registrar and Grantor Trustee of an indemnity reasonably satisfactory to them.

**Section 3.07.  Persons Deemed Owners**.  Except as otherwise expressly provided herein with respect to Record Dates, the Person in whose name a Certificate is registered in the Registration Books shall be deemed and regarded as the absolute owner the Certificate for all payments to be made to the Registered Holders pursuant to Article IV hereof, the delivery of all notices, filings, other communications and information to be delivered to the Registered Holders under any provision hereof and for all other purposes whatsoever, except as provided in Section 7.20 hereof, and none of the Depositor, the Grantor Trustee, the Registrar, the Credit Enhancer or any agent of any of them shall be affected by notice to the contrary.

**Section 3.08.  Access to List of Holders' Names and Addresses**.  The Grantor Trustee shall furnish or cause to be furnished to the Servicer and the Depositor, within 15 days after receipt by the Grantor Trustee of a written request therefor from the Servicer or the Depositor, a list, in such form as the Servicer or the Depositor may reasonably require, of the names and addresses of the Registered Holders as of the most recent Record Date.  Each Registered Holder, by receiving and holding a Certificate, and each Owner of a Book-Entry Beneficial Interest therein shall be deemed to have agreed not to hold any of the Depositor, the Servicer or the Grantor Trustee accountable by reason of the disclosure of its name and address, regardless of the source from which such information was derived.

**Section 3.09.  Terms of Certificates Binding**.  Each Owner, by virtue of its acquisition and acceptance of a Certificate or a Book-Entry Beneficial Interest (a) assents to and agrees to be

bound by the terms and conditions of the Certificates, the Book-Entry Beneficial Interests and this Trust Agreement, including any supplements or amendments thereto or hereto, and to perform the obligations of an Owner as set forth therein or herein, in all respects as if it were a signatory hereto and (b) represents and agrees that transfer thereof is restricted and agrees that it shall transfer such Certificate or Book-Entry Beneficial Interest only in accordance with the terms of this Trust Agreement and in compliance with applicable law. This undertaking is made for the benefit of the Trust Estate, the Grantor Trustee, the Depositor and all other Owners, if any.

**Section 3.10. Interests in Registered Holder's Rights To Receive Payments.** A Registered Holder may agree to deliver or cause to be delivered all or any portion of the payments it is entitled to receive with respect to its Certificates to another Person without transferring its Certificates pursuant to this Article; provided that:

      (a)    such Registered Holder shall remain the Registered Holder of its Certificates for all purposes of this Trust Agreement;

      (b)    such Registered Holder's obligations under this Trust Agreement shall remain unchanged and such Registered Holder shall remain solely responsible for the performance of such obligations under this Trust Agreement;

      (c)    all Persons shall continue to deal solely and directly with the Grantor Trustee in connection with such Registered Holder's Certificates and rights and obligations under this Trust Agreement;

      (d)    the Person to which such Registered Holder has agreed to deliver or cause to be delivered such payments agrees in writing that it has no rights under this Trust Agreement; and

      (e)    delivery shall effect no change in ownership of the Trust Estate.

**Section 3.11. Other Business Activities of Depositor, Grantor Trustee, Credit Enhancer, Servicer and Owners.** The Owners acknowledge that each party hereto, the Servicer and the Credit Enhancer, and their respective Affiliates, may make loans or otherwise extend credit to, and generally engage in any kind of business with the Borrower and its Affiliates, and any Person who may do business with the Borrower or its Affiliates, and receive payments on such other loans or extensions of credit to the Borrower, its Affiliates and such other Persons and otherwise act with respect thereto freely and without accountability in the same manner as if this Trust Agreement and the transactions contemplated hereby were not in effect.

**Section 3.12. Compliance With Law.** The Depositor will comply with all applicable laws affecting the creation, issuance and sale of the Certificates.

## ARTICLE IV

## APPLICATION OF TRUST ESTATE; CERTAIN DUTIES OF GRANTOR TRUSTEE

**Section 4.01. Distribution of Payments Received.**

(a) Amounts received by or on behalf of the Grantor Trustee with respect to the Trust Estate shall be distributed forthwith upon receipt by the Grantor Trustee as follows:

(i) Each Series A Regularly Scheduled Net Interest Payment, each Series A Regularly Scheduled Principal Payment and all other revenues, receipts and other payments of any kind whatsoever generated by the Trust Estate and received by the Grantor Trustee in respect of or relating to the Series A Note, including, without limitation, any proceeds of the Credit Enhancer Policy received by the Grantor Trustee with respect to the Series A Note, less any amounts required to be paid to the Credit Enhancer or the Servicer therefrom, shall be distributed forthwith upon receipt by the Grantor Trustee to the Registered Holders of the Series 2007A Certificates; provided that, notwithstanding any language herein to the contrary, to the extent that any payment made under the Credit Enhancer Policy relates to a Preference Amount (as defined in the Credit Enhancer Policy) recovered from an Owner of any Series 2007A Certificate, such amount received from the Credit Enhancer Policy shall be paid upon receipt by the Grantor Trustee to such Owner; and

(ii) Each Series B Regularly Scheduled Net Interest Payment, each Series B Regularly Scheduled Principal Payment and all other revenues, receipts and other payments of any kind whatsoever generated by the Trust Estate and received by the Grantor Trustee in respect of or relating to the Series B Note, including, without limitation, any proceeds of the Credit Enhancer Policy received by the Grantor Trustee with respect to the Series B Note, less any amounts required to be paid to the Credit Enhancer or the Servicer therefrom, shall be distributed forthwith upon receipt by the Grantor Trustee to the Registered Holders of the Series 2007B Certificates; provided that, notwithstanding any language herein to the contrary, to the extent that any payment made under the Credit Enhancer Policy relates to a Preference Amount (as defined in the Credit Enhancer Policy) recovered from the Owner of any Series 2007B Certificate, such amount received from the Credit Enhancer Policy shall be paid upon receipt by the Grantor Trustee to such Owner.

(b) The Servicer has been directed to wire transfer directly (i) to the Depository on behalf of the Book-Entry Beneficial Owners of the Series 2007A Certificates all amounts held by the Servicer payable to the Lender with respect to the Conveyed Property in respect of the Series A Note, less any amounts required to be paid to the Credit Enhancer or the Servicer therefrom; and (ii) to the Depository on behalf of the Book-Entry Beneficial Owners of the Series 2007B Certificates all amounts held by the Servicer payable to the Lender with respect to the Conveyed Property in respect of

the Series B Note, less any amounts required to be paid to the Credit Enhancer or the Servicer therefrom, in any case, when such amounts are due to the Lender under the Loan Documents and the Servicing Agreement. So long as the Depository or a successor is acting as securities depository for the Certificates, the Grantor Trustee shall direct the Servicer to pay such amounts directly to the Depository or successor securities depository on behalf of the Book-Entry Beneficial Owners of the Series 2007A Certificates and the Series 2007B Certificates, as appropriate. If at any time there is no securities depository for the Certificates, the Grantor Trustee shall (i) direct the Servicer to pay such amounts directly to the Grantor Trustee when such amounts are due to the Lender under the Loan Documents and the Servicing Agreement and (ii) distribute all such amounts received by it from the Servicer to the Registered Holders pursuant to subsection (a) of this Section. Promptly after making a payment directly to the Depository, the Servicer shall send a report to the Grantor Trustee setting forth the amounts so paid and showing (1) a breakdown between principal and net interest paid on the Loan and (2) such other information as the Grantor Trustee has specifically requested in writing and is reasonably required to perform its duties hereunder (collectively, a "Servicer Payment Report").

(c)     The Grantor Trustee shall have no liability for any actions or omissions of the Servicer, including without limitation the payment or application of funds by the Servicer pursuant to or as contemplated by Section 4.01(b). The Grantor Trustee shall be entitled to rely conclusively upon each Servicer Payment Report without further inquiry or verification.

**Section 4.02. Payments to Owners Pursuant to Credit Enhancer Policy**.

(a)     Immediately upon receipt of an insured obligations notice from the Servicer pursuant to Section 2.02 of the Credit Enhancement Agreement, or upon delivering such insured obligations notice to the Credit Enhancer if the Servicer has failed to do so or there is no Servicer, the Grantor Trustee shall (i) provide to the Credit Enhancer and the Servicer wire transfer instructions for the Credit Enhancer to wire transfer the applicable shortfall (A) so long as the Depository or a successor is acting as securities depository for the Certificates, directly to the Depository or successor securities depository on behalf of the Owners or (B) if there is no securities depository for the Certificates, directly to the Grantor Trustee for distribution to the Registered Holders. In addition, to the extent that the Servicer fails to do so or there is no Servicer, the Grantor Trustee shall make a claim under the Credit Enhancer Policy with respect to such shortfall.

(b)     If the Grantor Trustee has notice that any amount previously paid to an Owner has been deemed a Preference Amount and returned by such Owner (as defined in the Credit Enhancer Policy), the Grantor Trustee shall make a claim under the Credit Enhancer Policy in an amount equal to the Preference Amount, and upon receipt from the Credit Enhancer of such amount shall distribute such amount to the Owner from which the Preference Amount was recovered.

**Section 4.03. Payments to Registered Holders**.

(a)      Amounts payable to the Registered Holders hereunder of the Series 2007A Certificates or the Series 2007B Certificates shall be paid (i) to the Registered Holders of the Series 2007A Certificates or Series 2007B Certificates, as applicable, in proportion to their Percentage Principal Ownership Interest Series 2007A or Percentage Principal Ownership Interests Series 2007B, as applicable, determined as of the most recent Record Date, without deduction, set-off or adjustment of any kind, (ii) by (A) wire transfer of immediately available funds in accordance with complete and accurate wire transfer instructions delivered by such Registered Holder to the Grantor Trustee at least five days prior to the date a payment is made or (B) if no such wire transfer instructions have been delivered to the Grantor Trustee by such date, by check or draft of the Grantor Trustee mailed to the Registered Holder thereof at his address as it appears on the Registration Books as of the most recent Record Date.

(b)      Each distribution hereunder with respect to a Book-Entry Beneficial Interest shall be paid to the Depository, as Registered Holder thereof, and the Depository shall be responsible for crediting the amount of such distribution to the accounts of its Depository Participants in accordance with its normal procedures.  Each Depository Participant shall be responsible for disbursing such distribution to the Owners that it represents and to each indirect participating brokerage firm (a "brokerage firm" or "indirect participating firm") for which it acts as agent.  Each brokerage firm shall be responsible for disbursing funds to the Owners that it represents.  None of the Grantor Trustee, the Registrar, the Depositor, the Lender, or the Servicer shall have any responsibility therefor except as otherwise expressly provided by this Trust Agreement or applicable law.

(c)      If any amounts payable to a Registered Holder hereunder cannot be paid to such Registered Holder within 15 days of receipt by the Grantor Trustee for any reason, including but not limited to the receipt by the Grantor Trustee of inaccurate wire instructions or an inaccurate address for such Registered Holder, the Grantor Trustee shall hold those moneys, without liability for interest thereon, in a separate account for the exclusive benefit of such Registered Holder, who shall be restricted thereafter exclusively to those moneys for any claim of whatever nature with respect to such unpaid amounts under this Trust Agreement.  To the extent permitted by applicable law, and subject to the terms of Section 7.05(c) which shall control to the extent applicable and permitted by applicable law, any such moneys that have been so held by the Grantor Trustee, and which remain unclaimed by a Registered Holder, for a period of one year after the due date thereof shall be paid to the Borrower.  Thereafter, the Registered Holder to which such amounts are payable shall look only to the Borrower for payment and then only to the moneys so received by the Borrower or paid to or on behalf of the Borrower, without any interest thereon, and the Grantor Trustee shall not have any responsibility with respect to such amounts.

**Section 4.04. Payments Do Not Make Recipient an Income Beneficiary**.  Neither the making of any payments to, nor the receipt of any payments by any Person pursuant hereto shall ever be deemed to constitute the recipient as an income beneficiary hereunder.

**Section 4.05.  Payments From Trust Estate Only**.  All distributions to be made by the Grantor Trustee in respect of the Certificates or under this Trust Agreement shall be made only from the Trust Estate and the income and proceeds from or related to the Trust Estate and only to the extent that Grantor Trustee shall have actually received such income or proceeds from the Trust Estate, all in accordance with Section 4.01 and the other Sections hereof.  Each Owner, by its acceptance of a Certificate or a Book-Entry Beneficial Interest, agrees that it will look solely to the portion of the Trust Estate to the extent available for distribution to it as herein provided in Section 4.01 and the other Sections hereof and that, except as specifically provided in Section 6.01 hereof, the Grantor Trustee shall not be liable in its individual capacity to any Owner for any amount distributable in respect of any Certificate or for any other liability in respect of any Certificate.  This Section is intended solely to limit the liability of the Grantor Trustee and shall have no effect on the obligations of the Owners under this Trust Agreement.  This Section does not limit the liability of the Grantor Trustee set forth in Section 6.01 hereof.

**Section 4.06.  No Segregation of Moneys; No Interest; No Derivatives; Investments**.  Except as otherwise provided herein, moneys received by the Grantor Trustee hereunder need not be segregated in any manner, except to the extent required by applicable law, and may be deposited under such general conditions as may be prescribed by law (provided, that the moneys are held in trust for the benefit of the Owners, and the Grantor Trustee shall not be liable for any interest thereon).  The Grantor Trustee shall be under no obligation or duty to invest (or pay interest on) any amounts it may hold hereunder from time to time.  The Grantor Trustee shall not hold derivative financial instruments, and shall hold any moneys it receives hereunder prior to distribution either (a) uninvested or (b) solely at its option and without obligation to do so, invested in money market or other relatively risk free instruments without options and with maturities no later than the expected distribution date, including money market funds from which the Grantor Trustee or its affiliates derive a fee for investment advisory, or other, services to such fund.  The parties hereto acknowledge that regulations of the Comptroller of the Currency grant certain persons the right to receive brokerage confirmations as they occur.   To the extent permitted by law, such rights are hereby specifically waived.

**Section 4.07.  Compliance With Withholding Requirements**.  All amounts payable to the Registered Holders hereunder shall be made without deduction for any taxes, charges, levies or withholdings, except to the extent, if any, that such amounts are required to be withheld under the laws, rules and regulations of the United States of America and any other applicable taxing authority.  Notwithstanding any other provisions of this Trust Agreement, the Grantor Trustee (and the Servicer, to the extent making payments pursuant to Section 4.01(b)) shall comply with all United States federal withholding requirements applicable to it with respect to distributions made by it to the Registered Holders.  The consent of the Registered Holders shall not be required for any such withholding; except that no withholding shall be made to the extent that a Registered Holder presents to the Grantor Trustee a form evidencing entitlement to elimination or reduction of such withholding.  In the event the Grantor Trustee (or the Servicer) withholds any amount from a Registered Holder pursuant to withholding requirements, the amount so withheld shall be treated as having been paid to such Registered Holder for all purposes of this Trust Agreement (and no demand for payment in respect thereto shall be made under the Credit Enhancer Policy) and the Grantor Trustee (or the Servicer) shall indicate to such Registered Holder the amount so withheld.

Section 4.08.  **Excess Payments**.   If any Owner receives or obtains any payment (whether voluntary, involuntary, through the exercise of any right of setoff or otherwise) that is in excess of the amount to which it is then entitled under this Trust Agreement, or applicable law, such excess shall be held by such Owner as trustee for the other Owners and shall be distributed in accordance with this Trust Agreement or under applicable law or shall be returned by such Owner to the Grantor Trustee, the Servicer or other Person entitled thereto if so required by court of competent jurisdiction.

Section 4.09.  **Return of Payments**.  If the Owners have received any payment in respect of the Trust Estate, and thereafter that payment or application is rescinded or must otherwise be returned or paid over to any other Person, whether or not required pursuant to any bankruptcy or insolvency law, the sharing of payments clause of any agreement or otherwise, each Owner will promptly return an amount equal to its pro rata ownership interest in the subject payment (computed at the time such payment was received by the Owners) for application to the appropriate Person (including, without limitation, any interest due thereon).

Section 4.10.  **Payments Belonging to the Credit Enhancer**.  If the Grantor Trustee receives any amounts payable to the Credit Enhancer pursuant to the Credit Enhancement Agreement, the Grantor Trustee shall promptly remit such amounts to the Credit Enhancer in accordance with its wire instructions set forth in the Credit Enhancement Agreement.

## ARTICLE V

## AUTHORITY AND DUTIES OF GRANTOR TRUSTEE

Section 5.01.  **General Authority**.  The Grantor Trustee is authorized and empowered (i) to execute, deliver and perform its obligations under this Trust Agreement (ii) subject to the rights of the Credit Enhancer, to exercise or enforce the rights of the Lender under the Conveyed Documents, and (iii) to execute and deliver this Trust Agreement, and to execute and deliver each certificate or other document attached as an exhibit to this Trust Agreement, or each other certificate, instrument or other document that may be contemplated by this Trust Agreement, including, without limitation, the Credit Enhancement Agreement.   Without limiting the foregoing, the Grantor Trustee is specifically authorized to:

(a)     take whatever action shall be required to be taken by the terms of, and to exercise its rights and perform its duties under, each of the foregoing documents;

(b)     issue, execute and deliver the Certificates in the form attached hereto; and

(c)     perform such other duties of the Grantor Trustee as are specified herein or are incidental to the foregoing.

Section 5.02.  **General Duties**.  It shall be the duty of the Grantor Trustee to discharge (or cause to be discharged) all of its responsibilities pursuant to the terms of this Trust Agreement and the Conveyed Documents in the interest of the Owners, subject to the terms and in accordance with the provisions of such agreements and the Credit Enhancement Agreement.

**Section 5.03. Rights of Owners To Direct Grantor Trustee; Request For Instructions; Limitation on Directions and Instructions.**

(a)     Subject to the rights of the Credit Enhancer set forth in the Credit Enhancement Agreement and the rights of Capmark Capital in its individual capacity (rather than its capacity as the original Lender) under the Loan Agreement and the Servicing Agreement and the other Conveyed Documents, the Grantor Trustee shall take any action or refrain from taking any action hereunder or with respect to the Trust Estate that a Majority of Owners directs it to take or refrain from taking in a written direction signed by a Majority of Owners and delivered to the Grantor Trustee, provided, however, that:

(i)     the Grantor Trustee may condition any such action or inaction on its receipt of indemnification regarding liability and expenses satisfactory to it;

(ii)     unless an Event of Default has occurred and is continuing, the Grantor Trustee shall condition any such action or inaction on its receipt of (A) an Opinion of Counsel nationally recognized as competent in matters relating to the federal income taxation of the trust arrangements such as those created hereunder to the effect that such action or inaction will not cause an Adverse Trust Event (such Opinion of Counsel to be provided at the expense of the Person giving such direction or, if available, from amounts available for such purpose under the Servicing Agreement) or (B) written consents of all the Owners;

(iii)     if an Event of Default has occurred and is continuing, the Grantor Trustee may (but shall not have any obligation or duty to) condition any such action or inaction on its receipt of (A) an Opinion of Counsel nationally recognized as competent in matters relating to the federal income taxation of trust arrangements such as the those created hereunder to the effect that such action or inaction will not cause an Adverse Trust Event (such Opinion of Counsel to be provided at the expense of the Person giving such direction or, if available, from amounts available for such purpose under the Servicing Agreement) or (B) written consents of all the Owners;

(iv)     the Grantor Trustee shall not take any action with respect to any matter described in Section 7.02(c) hereof unless the direction is signed by all the Owners;

(v)     the Grantor Trustee shall not take any action with respect to any matter described in Section 7.02(d) hereof unless the direction is consented to by the Credit Enhancer;

(vi)     the Grantor Trustee shall not take any action with respect to any matter described in Section 7.02(e) hereof unless the direction is consented to by the Servicer;

(vii)     so long as any portion of the Series A Note is outstanding, upon an Event of Default the owner of the Series B Note (and, accordingly, the Grantor

Trustee on behalf of the Series 2007B Certificateholders) shall not, without the prior written consent of the owners of the Series A Note (and, accordingly, the Grantor Trustee shall not, without the consent of a Majority of Owners (subject to the rights of the Credit Enhancer) of the Series 2007A Certificates), take any action to (i) accelerate the payment of any portion of the Loan, (ii) foreclose the lien and security interest of the Security Instrument or other Loan Documents, or (iii) transfer funds from any account of the Servicing Agreement for payment of principal of or interest on the Series B Note (or for payment of amounts owing with respect to the Credit Enhancer Policy related to the Series B Note, the Series B Liquidity Facility Agreement), except for transfers from the Series B Reserve Account (which is funded with the Series B Liquidity Facility Agreement) and other transfers from accounts specifically authorized in the Loan Documents;

(viii)   the Grantor Trustee shall not take any action with respect to any matter described in Section 7.02(f) hereof unless the direction is consented to by all the Owners, the Credit Enhancer and the Servicer;

(ix)   the Grantor Trustee shall not act upon any direction signed by less than all the Owners unless and until it has given written notice of the receipt of such direction and its intention to act in accordance with such direction to all the Registered Holders and the Credit Enhancer; and

(x)   the receipt of a direction pursuant to this subsection shall not affect the Grantor Trustee's right or obligation to perform its duties hereunder with respect to matters that are not the subject of such direction to the extent the same are not inconsistent with such direction.

(b)   Whenever the Grantor Trustee is (i) unable to decide between alternative courses of action, (ii) is unsure as to the application of any provision of this Trust Agreement or any Conveyed Document, or any such provision hereof or thereof is ambiguous as to its application, or is, or appears to be, in conflict with any other applicable provision, or (iii) in the event that this Trust Agreement permits any determination by the Grantor Trustee or is silent or is incomplete as to the course of action that the Grantor Trustee is required to take with respect to a particular set of facts, the Grantor Trustee may promptly give notice to the Registered Holders requesting instructions from the Owners (to be given in such form as shall be appropriate under the circumstances and which, in the case of an action described in clause (i) of this subsection shall be from all Owners) as to the course of action to be adopted (or as may be applicable under Section 5.03(f) hereof may give such notice to and request instruction from the Credit Enhancer); provided, however, that in the event the Grantor Trustee does not receive such instructions within ten days of such notice (or within such shorter period of time as may be specified in such notice) it may, but shall be under no duty to, take or refrain from taking such action, not inconsistent with this Trust Agreement, as it shall deem to be in the best interests of the Owners and, subject to Section 6.01 hereof, shall not be liable to any Person as a result thereof.

(c)     Subject to Section 6.01 hereof, to the extent the Grantor Trustee acts in accordance with a direction or instructions received from the Owners, the Grantor Trustee shall not be liable to any Person.

(d)     Notwithstanding anything in this Trust Agreement (or elsewhere contained) to the contrary, neither the Grantor Trustee nor any of its respective agents, shall be required to take or refrain for taking any action under this Trust Agreement or any other agreement, or exercise any of their respective rights and powers, if the Grantor Trustee shall reasonably determine, or shall have been advised by counsel, that such action or inaction (i) is contrary to the express terms of this Trust Agreement or the duties or obligations of the Grantor Trustee hereunder, (ii) would adversely affect the tax status of the Trust Estate or the trust arrangement created hereunder or (iii) is otherwise contrary to law.

(e)     Notwithstanding anything in this Trust Agreement (or elsewhere contained) to the contrary, the Grantor Trustee shall not be required to expend or risk its own funds or otherwise incur financial liability in the performance of any of its respective duties hereunder, or in the exercise of any of its respective rights or powers hereunder, if there is reasonable ground for believing that the repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured to the Grantor Trustee and none of the provisions contained in this Trust Agreement shall in any event require the Grantor Trustee to perform, or be responsible for the manner of performance of, any of the obligations of any other party under this Trust Agreement.

(f)     Except for the Grantor Trustee's rights under clauses (i) and (iii) of Section 5.03(d) and the Grantor Trustee's rights under Section 5.03(e), nothing in this Section shall limit or restrict the rights of the Credit Enhancer to direct actions on the part of the Grantor Trustee as Lender with respect to the Loan and the Loan Documents pursuant to the terms of the Credit Enhancement Agreement, and the Grantor Trustee shall take (and shall be under no liability to any Person in taking, notwithstanding any term appearing in this Trust Agreement or elsewhere to the contrary unless the Grantor Trustee acted with negligence or willful misconduct in following such instructions) all actions the Grantor Trustee is directed to take by the Credit Enhancer as Lender with respect to the Loan and the Loan Documents pursuant to the terms of the Credit Enhancement Agreement.

**Section 5.04. Limitations on Acts of Grantor Trustee.**

(a)     Notwithstanding anything in this Trust Agreement to the contrary, the Grantor Trustee shall not be entitled to and shall not (a) authorize the merger or consolidation of the Trust Estate with or into any other person or entity, or (b) without the consent of a Majority of Owners, initiate any claim or lawsuit in connection with the Trust Estate or compromise any claim or lawsuit brought by or against the Trust Estate; and in any case the Grantor Trustee shall be entitled to the protections of Section 5.03 hereof (including its right to receive satisfactory indemnification) in connection with any action of the Grantor Trustee directed to be taken pursuant to such vote of a Majority of Owners contemplated by this Section.

(b)     Notwithstanding any term contained herein to the contrary, and for the avoidance of doubt, so long as the Credit Enhancement Agreement remains in effect and no Credit Enhancer Default has occurred and is continuing, except as may be provided in the Credit Enhancement Agreement, the Credit Enhancer shall alone be entitled, pursuant to its rights under the Credit Enhancement Agreement, to give direction, instruction or consent to the Grantor Trustee with respect to the exercise or enforcement of remedies as Lender on behalf of and in lieu of the Owners (as fully as if the Credit Enhancer were the Owner of 100% of the outstanding principal amount of the Series 2007A Certificates and 100% of the Series 2007B Certificates) under and pursuant to any terms of this Trust Agreement, in each case if and to the extent that the Owners are authorized or permitted to do so (or to the extent the same is required) under the terms of this Trust Agreement, and otherwise subject to the terms of this Trust Agreement (including the Grantor Trustee's rights of indemnification hereunder); and the Grantor Trustee shall not be obligated to follow any instruction from the Owners pursuant to applicable terms of this Trust Agreement with respect to the exercise or enforcement of remedies as Lender (unless and except to the extent expressly instructed or consented to in writing by the Credit Enhancer, in accordance with the terms hereof) so long as the Credit Enhancement Agreement remains in effect and no Credit Enhancer Default has occurred and is continuing.

**Section 5.05. Notices to Registered Holders.**  The Grantor Trustee agrees to mail a copy of each written notice that it receives with respect to the Loan, the Loan Documents and/or the Government Agreements to each Registered Holder at its address as it appears on the Registration Books within five Business Days of the date such notice is received by the Grantor Trustee.

**Section 5.06. Accounting and Reports to Registered Holders and Tax Authorities.**

(a)     The Grantor Trustee shall perform or cause to be performed on behalf of the Trust Estate all reporting and other tax compliance duties that are required in respect thereof under the Code, the Grantor Trust Provisions or other compliance guidance issued by the Internal Revenue Service or any state or local taxing authority.

(b)     The Grantor Trustee shall deliver or cause to be delivered to each Registered Holder and shall file or cause to be filed with the Internal Revenue Service such information with respect to the income and deductions of the Trust Estate at the time or times and in the manner required by the Code, including such other customary factual information as is available to the Grantor Trustee to enable the Registered Holder to prepare its tax returns, including information required with respect to computing the accrual or original issue and market discount, if any.  In the event that tax returns are required to be filed with respect to the Trust Estate, the Grantor Trustee shall prepare or cause to be prepared, and sign and file when due with the appropriate tax authorities all of the tax returns in respect of the Trust Estate.  In no event shall the Grantor Trustee or the Depositor be liable for any liabilities, costs or expenses of the Trust Estate, the trust arrangement created hereunder or the Owners arising out of the application of any tax law, including federal, state, foreign or local income or excise taxes or any other tax imposed on or measured by income (or any interest, penalty or addition with respect

thereto or arising from a failure to comply therewith) except for any such liability, cost or expense attributable to any act or omission by the Grantor Trustee or the Depositor, as the case may be, in breach of their respective obligations under this Trust Agreement.

(c)     If any tax is imposed on the Trust Estate, such tax, together with all incidental costs and expenses (including, without limitation, penalties and reasonable attorneys' fees) shall be charged to and payable by: (i) the Grantor Trustee, if such tax arises out of or results from a breach by the Grantor Trustee of any of its obligations under this Trust Agreement; or (ii) the Owners in proportion to their Percentage Principal Ownership Interests from their own funds and not from the Trust Estate.

(d)     Based on information obtained from the Servicer or of which the Grantor Trustee is otherwise aware, the Grantor Trustee shall, for federal income tax purposes, maintain books and records with respect to the Trust Estate on a calendar year basis or such other basis as may be required under the Code.

(e)     All taxes due and payable on any amounts payable to an Owner with respect to a Certificate or a Book-Entry Beneficial Interest shall be that Owner's sole responsibility.

**Section 5.07. UCC Financing Statements**. The Grantor Trustee shall cause to be filed (i) on a timely basis continuation statements with respect to the UCC financing statements received by the Grantor Trustee pursuant to Section 2.11(a), provided that the Grantor Trustee shall be entitled to rely conclusively on the information appearing on (or otherwise delivered to it with) the copies it receives under said Section 2.11(a) and to assume that such UCC Financing Statements have been properly filed in all necessary offices and in proper form, and (ii) such other UCC financing statements (and continuation statements with respect thereto, as and when necessary), as the Grantor Trustee may be advised and directed by an Opinion of Counsel provided to it by an Owner or the Depositor as being necessary under applicable law to perfect and maintain the Grantor Trustee's security interests in the Trust Estate, including, but not limited to, financing statements to extend or replace those described in Section 2.11(a) hereof. In performing its duties under this Section, the Grantor Trustee may assume that the Servicer will file or cause to be filed all UCC Financing Statements (and continuation statements) that the Servicer has agreed to file or caused to be filed under the Servicing Agreement absent actual knowledge that the Servicer has done so.

**Section 5.08. No Duties Except as Specified in Trust Agreement, Directions or Instructions**. The Grantor Trustee shall not have any duty or obligation to manage, control, use, make any payment in respect of, register, record, sell, dispose of or otherwise deal with any part of the Trust Estate, or to otherwise take or refrain from taking any action under, or in connection with this Trust Agreement or any document contemplated by this Trust Agreement or any other agreement to which the Grantor Trustee in its capacity as trustee hereunder is a party, except as expressly provided by the terms of this Trust Agreement or as expressly directed in written directions or instructions pursuant to Section 5.03 or 5.04 hereof.   No implied duties or obligations shall be read into this Trust Agreement against or on the part of the Grantor Trustee.

**Section 5.09.  Discharge of Liens**.  Notwithstanding anything in this Trust Agreement to the contrary, the Grantor Trustee agrees that it will, at its own cost and expense (and not at the expense of the Trust Estate), promptly take all action as may be necessary to discharge any liens on any part of the Trust Estate which are attributable to actions by or claims against the Grantor Trustee that are not related to the ownership of the Trust Estate or the administration of the Trust Estate or the transactions contemplated by this Trust Agreement.

**Section 5.10.  Grantor Trust Administration**.

(a)      Notwithstanding anything in this Trust Agreement to the contrary, and notwithstanding any direction or instruction by less than all the Owners (which direction or instruction may not, notwithstanding any other language contained herein, be given by the Credit Enhancer), the Grantor Trustee shall not be authorized to take any action that would cause the Trust Estate or the trust arrangement created hereunder not to be taxed as a trust under the Code.  The Grantor Trustee shall perform its duties hereunder so as to maintain the status of the Trust Estate and the trust arrangement created hereunder as a trust under the Grantor Trust Provisions.  The Grantor Trustee shall not (a) in the absence of an Event of Default under the Loan Agreement, modify the Loan, the Loan Agreement, the Series A Note or the Series B Note, or exercise any discretionary rights with respect to any of the foregoing, (b) acquire an interest in any Additional Permitted Indebtedness or any other debt or (c) knowingly take any other action or fail to take (or fail to cause to be taken) any other action that it is required to take under the terms of this Trust Agreement that, under the Grantor Trust Provisions, if taken or not taken, as the case may be, could adversely affect the status of the Trust Estate or the trust arrangement created hereunder as a trust under the Grantor Trust Provisions (any such adverse effect on trust status, an "Adverse Trust Event"), unless the Grantor Trustee has obtained or received an Opinion of Counsel nationally recognized as competent in matters relating to the federal income taxation of trust arrangements such as those created hereunder (at the expense of the party requesting such action or at the expense of the Trust Estate if the Grantor Trustee seeks to take such action or to refrain from taking any action for the benefit of the Owners) to the effect that the contemplated action will not result in an Adverse Trust Event.  None of the other parties hereto shall take any action or fail to take any action (whether or not authorized hereunder) as to which the Grantor Trustee has advised it in writing that the Grantor Trustee has received or obtained an Opinion of Counsel to the effect that an Adverse Trust Event could result from such action or failure to act.  The Grantor Trustee may consult with counsel to make such written advice, and the cost of same shall be borne by the party seeking to take the action not permitted by this Trust Agreement, but in no event at the cost or expense of the Trust Estate or the Grantor Trustee.

(b)      Notwithstanding anything in this Trust Agreement or the Transaction Documents to the contrary, and notwithstanding any direction or instruction by the Owners or the Credit Enhancer, the Grantor Trustee shall not be authorized or permitted to take any action that would cause the Grantor Trustee to have any obligation or duty as a fiduciary under ERISA or Section 4975 of the Code with investment discretion over any Benefit Plan Assets.  Prior to taking, or upon receipt of direction to take, any action that it reasonably believes might be in violation of this Section, the Grantor Trustee shall

be entitled to request, receive and rely conclusively upon an Opinion of Counsel to the affect that such action is not in violation of the terms or requirements of this Section or of ERISA or Section 4975 of the Code.

## ARTICLE VI

## CONCERNING THE GRANTOR TRUSTEE

**Section 6.01. Acceptance of Trusts and Duties.** The Grantor Trustee accepts the trusts hereby created and agrees to perform the same only upon the terms of this Trust Agreement. The Grantor Trustee declares that it shall hold ownership of the Trust Estate, and all amounts received by it thereunder and hereunder in trust, upon the terms herein set forth, for the use and benefit of all present and future Owners. The Grantor Trustee also agrees to disburse all moneys actually received by it constituting part of the Trust Estate upon, and subject to, the terms of this Trust Agreement. The Grantor Trustee shall not be personally answerable, liable or accountable in its individual capacity under any circumstances, except (i) for its own willful misconduct, bad faith, negligence or reckless disregard of the duties involved in the conduct of its offices hereunder or the willful misconduct, bad faith, negligence or reckless disregard of the duties involved in the conduct of its offices hereunder performed through its agent not appointed with due care, (ii) in the case of the material inaccuracy of any representation or warranty contained in Section 6.02 hereof, or (iii) for taxes, fees or other charges that may be imposed or assessed against it and which are imposed on, based on or measured by, any fees, commissions or compensation received by it in connection with any of the transactions contemplated by this Trust Agreement. Subject to the foregoing, and not by way of limitation:

(a)     under no circumstances shall the Grantor Trustee be personally liable hereunder for any indebtedness payable from or secured by the Trust Estate;

(b)     the Grantor Trustee shall not be personally responsible for or in respect of the validity or sufficiency of this Trust Agreement or the due execution hereof by the other parties to this Trust Agreement, or for or in respect of the validity or sufficiency of the Conveyed Documents, other than the certificate of authentication on the Certificates, and the Grantor Trustee shall in no event assume or incur any liability, duty, or obligation to any Owner, other than as expressly provided for herein and in the this Trust Agreement;

(c)     the Grantor Trustee shall not be personally liable for the payment of any tax imposed on the Trust Estate, the trust arrangement created hereunder or amounts that are includable in the federal gross income of the Owners; and

(d)     the Grantor Trustee shall not be liable to the Depositor or the Owners with respect to any action taken or omitted to be taken by it in accordance with the direction or instructions of the Depositor, the Credit Enhancer, or a Majority of the Owners to the extent they were authorized to give such direction, unless the Grantor Trustee acted with negligence or willful misconduct.

**Section 6.02. Representations and Warranties of Grantor Trustee.** The Grantor Trustee hereby represents and warrants for the benefit of the Depositor and the Owners that:

(a)     the Grantor Trustee is a national banking association duly organized and validly existing in good standing under the laws of the jurisdiction of its creation, with all requisite corporate power and authority and all material franchises, grants, authorizations, consents, orders and approvals from all Governmental Authorities necessary under applicable laws to execute, deliver and perform its obligations under this Trust Agreement;

(b)     the Grantor Trustee has the corporate power and authority to execute, deliver and perform this Trust Agreement and the issuance of the Certificates by the Grantor Trustee pursuant to this Trust Agreement is within the corporate power of the Grantor Trustee, has been duly authorized by all necessary corporate action on the part of the Grantor Trustee (no action by its shareholders being required) and does not and will not (i) violate or contravene any federal or state law, governmental rule or regulation governing the powers of the Grantor Trustee or any judgment, decree or order binding on the Grantor Trustee, (ii) conflict with or result in a breach of, or constitute a default under, any provision of the corporate charter or by-laws of the Grantor Trustee or of any material agreement, contract, indenture, mortgage or other instrument to which the Grantor Trustee is a party or by which any of its properties may be bound, or (iii) result in the creation or imposition of any lien on the Trust Estate resulting from actions by or claims against the Grantor Trustee;

(c)     no consent, approval, authorization or order of, or filing with, any court or regulatory, supervisory or governmental agency or body is required under state law by or for the Grantor Trustee, in its individual capacity and in its capacity as Grantor Trustee, as the case may be, in connection with, (i) the execution, delivery and performance by the Grantor Trustee of this Trust Agreement, (ii) the execution of the Certificates by the Grantor Trustee pursuant to this Trust Agreement, or (iii) the performance of the trusts by the Grantor Trustee or the consummation by the Grantor Trustee of the transactions contemplated hereby;

(d)     to the Grantor Trustee's best knowledge, there are no proceedings or investigations pending or threatened against the Grantor Trustee before any court, regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Grantor Trustee or its properties: (i) asserting the invalidity of this Trust Agreement (ii) seeking to prevent the consummation of any of the transactions contemplated by this Trust Agreement or (iii) seeking any determination or ruling that might materially and adversely affect the performance by the Grantor Trustee of its obligations under, or the validity or enforceability of, this Trust Agreement; and

(e)     this Trust Agreement has been executed and delivered by its Authorized Officers who are duly authorized to execute and deliver such document in such capacity on its behalf and constitutes the legal, valid and binding obligation of the Grantor Trustee, enforceable against the Grantor Trustee in accordance with its terms, subject to applicable

bankruptcy, insolvency, reorganization, moratorium and other similar laws affecting the enforcement of creditors' rights generally and to general principles of equity.

**Section 6.03. Reliance; Advice of Counsel; Other Protections**.

(a)     The Grantor Trustee may rely and shall be protected from any liability to anyone in acting or refraining to act upon any signature, instrument, notice, telephonic instruction, resolution, request, consent, order, certificate, report, opinion, bond or other document or paper reasonably believed by it to have been genuine and signed or presented by the proper party or parties.  The Grantor Trustee may accept a certified copy of a resolution of the board of directors or other governing body of any corporate party as conclusive evidence that such resolution has been duly adopted by such body and that the same is in full force and effect.  As to any fact or matter the manner of ascertainment of which is not specifically prescribed herein, the Grantor Trustee may for all purposes hereof rely on a certificate, signed by the president or any vice president and by the treasurer or the secretary of the relevant party, as to such fact or matter, and such certificate shall constitute full protection to the Grantor Trustee for any action taken or omitted to be taken by it in good faith in reliance thereon.

(b)     The Grantor Trustee shall not be personally liable in its exercise or administration of the Trusts and powers hereunder and in the performance of its duties and obligations under this Trust Agreement; the Grantor Trustee may consult with counsel or certified public accountants to be selected with due care and employed by it, and the Grantor Trustee shall not be liable for any action taken, suffered or omitted by it in good faith and believed by it to be authorized or within the discretion or rights or powers conferred upon it by this Trust Agreement, in accordance with the advice or opinion of any such counsel with respect to legal matters or such accountants with respect to financial accounting matters.

(c)     The Grantor Trustee:

(i)     shall not be under any duty to monitor or investigate compliance by the Servicer under or with regard to the Servicing Agreement, or any other party under or with respect ·to compliance with or performance under the Conveyed Documents, or to verify or investigate the accuracy or contents of any certificate or report delivered to the Grantor Trustee hereunder or thereunder;

(ii)     shall be entitled to assume the due authority and genuineness of any signature appearing on any instrument or document it may receive;

(iii)     shall not be liable for any action taken in good faith and reasonably believed by it to be within the powers conferred upon it, so long as it is not negligent in ascertaining the pertinent facts, and shall not be liable for action taken (or forbearance from action) by it pursuant to direction or instruction given by a party authorized or permitted by the terms hereof to direct the Grantor Trustee, or omitted to be taken by it by reason of a lack of direction or instruction required hereby for such action;

(iv)    shall in no event be liable for the application or misapplication of funds by any other person or entity, or for the acts or omissions of any other person or entity;

(v)    shall not be charged with knowledge or notice of any matter, including without limitation any Event of Default, unless and until actually known to an officer of the Grantor Trustee working in its Corporate Trust Division and responsible for the administration of this Trust Agreement; and

(vi)    may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents or attorneys and the Grantor Trustee shall not be responsible for any misconduct or negligence on the part of any agent or attorney appointed with due care.

(d)    The grant of any permissive right or power to the Grantor Trustee hereunder shall not be construed to impose a mandatory duty to act.

**Section 6.04. Not Acting in Individual Capacity.**   In accepting the trusts hereby created the Grantor Trustee acts solely as trustee hereunder and not in its individual capacity, and all Persons having any claim against the Grantor Trustee or the Trust Estate by reason of the transactions contemplated by this Trust Agreement shall look only to the Trust Estate for payment or satisfaction thereof.

**Section 6.05. Compensation and Expenses.**   The Borrower has agreed, in Section 10.12 of the Loan Agreement, to pay the fees of the Grantor Trustee and reimburse the Grantor Trustee for expenses incurred with respect to the performance of its services hereunder, or under or pursuant to any of the other Transaction Documents. To, and only to, the extent paid by the Borrower in accordance with the Loan Agreement, the Grantor Trustee shall be entitled to reasonable compensation for its services hereunder (which shall not be limited by any law on compensation of a trustee of an express trust) and which may include extraordinary charges and expenses for services after and during the continuance of an Event of Default. The Grantor Trustee agrees that (a) only the Borrower will be responsible for the payment of the fees and expenses of the Grantor Trustee for the performance of its services hereunder (b) the Grantor Trustee will not be entitled to payment of any fees or expenses from the Depositor, the Owners (subject to the terms of Section 5.03(a)(i) and 5.03(e) of this Trust Agreement), the Servicer (except as may be provided in the Servicing Agreement), the Lender, the Credit Enhancer or any other Person other than the Borrower and (c) if the Borrower fails to pay the fees and expenses of the Grantor Trustee (i) the Grantor Trustee's only remedy will be against the Borrower and any collateral securing the Borrower's obligations to the Grantor Trustee for such fees and expenses, and (ii) the Grantor Trustee will not fail to perform or delay in the performance of any of its duties hereunder (subject to the terms of Section 5.03(a)(i) and 5.03(e) of this Trust Agreement) or resign as Grantor Trustee because of the failure of the Borrower to pay such fees and expenses, except that the Grantor Trustee may resign if it is not promptly reimbursed for out-of-pocket expenses related to expenses incurred pursuant to Section 5.06(b) hereof. Expenses reimbursable to the Grantor Trustee under this Section shall include, without limitation, the costs incurred by the Grantor Trustee or on its behalf in connection with the preparation and filing of any and all tax returns pursuant to Section 5.06(b) hereof, routine tax administration expenses

incurred with respect to the Trust Estate or the interests of the Owners in the Trust Estate, and professional fees or expenses (including attorneys fees and expenses) related to audits or any administrative or judicial proceedings with respect to the Trust Estate or the interests of the Owners in the Trust Estate that involve the Internal Revenue Service or state tax authorities.

**Section 6.06. Indemnification of Grantor Trustee.**

(a)     The Owners, jointly and severally, agree to assume liability for, and hereby indemnify and hold harmless the Grantor Trustee and its officers, directors and employees from and against any and all liabilities, obligations, losses, damages, taxes, claims, actions, suits, costs, expenses and disbursements (including reasonable legal fees and expenses) of any kind and nature whatsoever which may be imposed on, incurred by or asserted at any time against the Grantor Trustee or its officers, directors and employees in any way relating to or arising out of the Trust Estate, any of the properties included therein, the acceptance, termination or administration of the Trust Estate or the trust arrangement created hereunder or any action or inaction of the Grantor Trustee or under the Conveyed Documents, or under or pursuant to any of the other Transaction Documents, or any other agreement contemplated by any of the foregoing, except only that the Owners shall not be required so to assume liability for any amounts payable to the Grantor Trustee pursuant to Section 6.05 hereof (subject to the terms of Section 5.03(a)(i) and 5.03(e) if this Trust Agreement) or with respect to any of the matters described in the fourth sentence of Section 6.01 hereof, and provided further that the Owners and the Grantor Trustee agree that such assumption of liability for liabilities, obligations, losses, damages, taxes, claims, actions, costs, expenses or disbursements of any kind shall be direct and primary and not that of a guarantor.

(b)     If any item assumed by the Owners under this Section is also subject to indemnification by another party pursuant to any of the documents specifically referenced herein, the Grantor Trustee shall first make demand on such party for indemnification of any such item but shall not be obligated to exhaust its remedies thereunder.

(c)     Any amounts payable to the Grantor Trustee pursuant to this Section shall be payable by the Owners in proportion to their Percentage Principal Ownership Interests from their own funds and not from the Trust Estate.

(d)     The indemnities contained in this Section shall survive the resignation or removal of the Grantor Trustee and shall survive the termination of the trust arrangement created hereunder and this Trust Agreement.

(e)     The liabilities and indemnities contained in this Section are for the benefit of the Grantor Trustee, in its individual capacity and its officers, directors and employees and shall not be construed as imposing any liabilities on any Owners or any affiliate thereof for any expense or liability of the Trust Estate to third parties. The Owners shall not have liability for the expenses and liability of the Trust Estate (except as otherwise may be provided in this Trust Agreement with respect to the Grantor Trustee, in its individual capacity) and all such expenses and liabilities shall be payable solely pursuant to Section 6.05 hereof.

**Section 6.07.  Resignation, Discharge or Removal of Grantor Trustee; Successor.**

(a)    The Grantor Trustee shall not be entitled to resign solely because its fees and expenses are not paid pursuant to Section 6.05 hereof (provided, however, that the foregoing shall not limit or impede the Grantor Trustee's rights under Section 5.03(a)(i) or 5.03(e) hereof) or because it is no longer willing to perform its duties hereunder for the compensation that the Borrower has agreed to pay to it.  Subject to the preceding sentence, (i) the Grantor Trustee or any successor may resign at any time without cause by giving at least 60 days' prior written notice to the Registered Holders, the Depositor, the Servicer and the Credit Enhancer and (ii) a Majority of Owners may at any time remove the Grantor Trustee or any successor without cause by written notice to the Grantor Trustee, or any successor, as applicable (the resigning or removed Grantor Trustee hereinafter is referred to as the "Terminating Grantor Trustee").  In the event of the resignation or removal of the Terminating Grantor Trustee, a Majority of Owners shall appoint a successor by written instrument.  If a successor shall not have been appointed within 60 days after the giving of such notice, the Terminating Grantor Trustee or a Majority of Owners may apply to any court of competent jurisdiction in the United States to appoint a successor to the Terminating Grantor Trustee to act until such time, if any, as a successor shall have been appointed as provided above.  Any successor so appointed by such court shall immediately and without further act be superseded by any successor appointed as provided above within one year from the date of the appointment by such court.  Notwithstanding anything herein to the contrary, the resignation or removal of the Terminating Grantor Trustee shall be effective only upon the acceptance of such appointment by a successor meeting the requirements specified herein.

(b)    The Grantor Trustee hereunder shall at all times be a banking corporation or a national banking association with trust powers organized and doing business under the laws of such state or the United States of America, authorized under such laws to exercise corporate trust powers, having a combined capital and surplus of at least $75,000,000 and subject to supervision or examination by federal or state authority.  If such banking corporation or national banking association publishes reports of condition at least annually, pursuant to law or to the requirements of the aforesaid supervising or examining authority, then for the purposes of this Section the combined capital and surplus of such corporation shall be deemed to be its combined capital and surplus as set forth in its most recent report of condition so published.  In case at any time the Grantor Trustee shall cease to be eligible in accordance with the provisions of this Section, the Grantor Trustee shall resign immediately.

(c)    Any successor Grantor Trustee, however appointed, shall execute and deliver to its predecessor Grantor Trustee an instrument accepting such appointment, and thereupon the resignation or removal of the predecessor Grantor Trustee shall become effective and the appointment of such successor Grantor Trustee shall become effective without further act, deed or conveyance and such successor Grantor Trustee shall become fully vested with all the estates, properties, rights, powers, duties and trusts and obligations of its predecessor hereunder with like effect as if originally named as Grantor Trustee herein.  Upon the written request of such successor, such predecessor shall execute and deliver an instrument transferring to such successor, upon the Trusts herein

expressed, all the estates, properties, rights, powers, duties and Trusts of such predecessor, and such predecessor shall duly assign, transfer, deliver and pay over to such successor all moneys or other property then held by such Predecessor Grantor Trustee upon the trusts herein expressed. Any right of the Owners against the Grantor Trustee, in its individual capacity, shall not be prejudiced by the appointment of any successor and shall survive the termination of the trust arrangement created hereunder and this Trust Agreement.

(d)     Any corporation or national banking association into which the Grantor Trustee may be merged or converted or with which it may be consolidated or any corporation or national banking association resulting from any merger, conversion or consolidation to which the Grantor Trustee shall be a party, or any corporation or national banking association succeeding to all or substantially all of the corporate trust business of the Grantor Trustee, shall be the successor of the Grantor Trustee hereunder, without the execution or filing of any paper or any further act on the part of any of the parties hereto, anything to the contrary notwithstanding. The Grantor Trustee shall mail notice of any such merger or consolidation to the Registered Holder at its address as shown in the Registration Books and to the Depositor, the Credit Enhancer and the Servicer.

**Section 6.08.  Appointment of Additional Grantor Trustees or Agents.**

(a)     Notwithstanding any other provisions hereof, at any time, for the purpose of meeting any legal requirements of any jurisdiction in which any part of the Trust Estate or property securing the same may at the time be located, a Majority of Owners and the Grantor Trustee acting jointly shall have the power and shall execute and deliver all instruments to appoint one or more Persons approved by the Grantor Trustee to act as co-Grantor Trustee or co-Grantor Trustees, jointly with the Grantor Trustee, or separate Grantor Trustee or separate Grantor Trustees, of all or any part of the Trust Estate, and to vest in such Person or Persons, such powers, duties, obligations, rights and trusts as the Majority of Owners and the Grantor Trustee may consider necessary or desirable. If a Majority of Owners shall not have joined in such appointment within 15 days after the receipt by it of a request so to do, the Grantor Trustee alone shall have the power to make such appointment.

(b)     In the case of any appointment of a co-Grantor Trustee or separate Grantor Trustee pursuant to this Section all rights, powers, duties and obligations conferred or imposed upon the Grantor Trustee shall be conferred or imposed upon and exercised or performed by the Grantor Trustee, and such separate Grantor Trustee or co-Grantor Trustee jointly, except to the extent that under any law of any jurisdiction in which any particular act or acts are to be performed, the Grantor Trustee shall be incompetent or unqualified to perform such act or acts, in which event such rights, powers, duties and obligations (including the holding of title to the Trust Estate or any portion thereof in any such jurisdiction shall be exercised and performed by such separate Grantor Trustee or co-Grantor Trustee at the direction of the Grantor Trustee.

(c)     Unless otherwise provided in the instrument appointing such co-Grantor Trustee or separate Grantor Trustee, every co-Grantor Trustee or separate Grantor Trustee shall, to the extent permitted by law, be appointed subject to the following terms:

(i)     all rights, powers, trusts, duties and obligations conferred by this Trust Agreement upon the Grantor Trustee in respect of the custody, control or management of the Trust Estate, moneys, papers, securities and other personal property shall be exercised solely by the Grantor Trustee;

(ii)     all rights, powers, trusts, duties and obligations conferred or imposed by this Trust Agreement upon the Grantor Trustees shall be conferred or imposed upon and exercised or performed by the Grantor Trustee, or by the Grantor Trustee and such co-Grantor Trustee or co-Grantor Trustees, or separate Grantor Trustee or separate Grantor Trustees jointly, except to the extent that, under the law of any jurisdiction in which any particular act or acts are to be performed, the Grantor Trustee shall be incompetent or unqualified to perform such act or acts;

(iii)     any request in writing by the Grantor Trustee to any co-Grantor Trustee or separate Grantor Trustee to take or to refrain from taking any action hereunder shall be sufficient warrant for the taking, or the refraining from taking, of such action by such co-Grantor Trustee or separate Grantor Trustee;

(iv)     any co-Grantor Trustee or separate Grantor Trustee to the extent permitted by law may delegate to the Grantor Trustee the exercise of any right, power, trust, duty or obligation, discretionary or otherwise;

(v)     the Grantor Trustee at any time, by an instrument in writing, may accept the resignation of or remove any co-Grantor Trustee or separate Grantor Trustee appointed under this Section.  A successor to any co-Grantor Trustee or separate Grantor Trustee so resigned or removed may be appointed in the manner provided in this Section;

(vi)     neither the Grantor Trustee nor any co-Grantor Trustee or separate Grantor Trustee appointed hereunder shall be personally liable by reason of any act or omission of any other Grantor Trustee hereunder selected by it with reasonable care;

(vii)     any demand, request, direction, appointment, removal, notice, consent, waiver or other action in writing delivered to the Grantor Trustee shall be deemed to have been delivered to each such co-Grantor Trustee or separate Grantor Trustee; and

(viii)     any moneys, papers, securities or other items of personal property received by any such co-Grantor Trustee or separate Grantor Trustee hereunder shall forthwith, so far as may be permitted by law, be turned over to the Grantor Trustee to be held pursuant to the terms hereof.

(d)     Upon the acceptance in writing of such appointment by any such co-Grantor Trustee or separate Grantor Trustee, such Person shall be vested with the estate, right, title and interest in the Trust Estate, or portion thereof, and with such rights, powers, duties, trusts or obligations, jointly or separately with the Grantor Trustee, as set forth herein or otherwise, all as shall be specified in the instrument of appointment, subject to all the terms hereof.  Every such acceptance shall be filed with the Grantor Trustee.

(e)     In case any co-Grantor Trustee or separate Grantor Trustee shall die, become incapable of acting, resign or be removed, the estate, right, title and interest in the Trust Estate and all rights, powers, trusts, duties and obligations of said co-Grantor Trustee or separate Grantor Trustee shall, so far as permitted by law, vest in and be exercised by the Grantor Trustee unless and until a successor co-Grantor Trustee or separate Grantor Trustee shall be appointed pursuant to this Section.

**Section 6.09. Grantor Trustee May Enforce Claims Without Possession of Certificates**. All rights of action and claims under this Trust Agreement may be prosecuted and enforced by the Grantor Trustee with or without the possession of any of the Certificates or the production thereof in any proceeding relating thereto, and such proceeding instituted by the Grantor Trustee shall be brought in its own name or in its capacity hereunder in equity or at law or otherwise for the enforcement of any legal, equitable or other remedy, as the Grantor Trustee being advised by counsel, shall deem most effectual to protect and enforce any of its respective rights and the rights of the Owners.  Any recovery of a judgment shall, after provision for the payment of the reasonable compensation, expenses, disbursement and advances of the Grantor Trustee, its respective agents and counsel, be for the ratable benefit of the Owners in respect of which such judgment has been recovered.

**Section 6.10. Grantor Trustee May Own Certificates**.  The Grantor Trustee in its individual or any other capacity may become the owner or pledgee of Certificates with the same rights as it would have if it were not the Grantor Trustee.

**Section 6.11. Not Responsible For Statements**.  The recitals contained herein and in the Certificates (other than the Grantor Trustee's Certificate of Authentication appearing on the Certificates) shall be taken as the statements of the Depositor, and the Grantor Trustee assumes, and shall have, no responsibility for the correctness of the same. The Grantor Trustee makes no representation or warranty as to the validity with respect to any person other than the Grantor Trustee or sufficiency of this Trust Agreement or of the Certificates (other than the Grantor Trustee's Certification of Authentication appearing on the Certificates).

## ARTICLE VII

## MISCELLANEOUS

**Section 7.01. Further Assurances**.  The Depositor, the Grantor Trustee and each Owner shall cooperate fully with each other in order to carry out promptly and fully the terms and provisions of this Trust Agreement.  Each party hereto shall take such action and deliver such instruments to any other party hereto, in addition to the actions and instruments specifically

provided for herein, as may be reasonably requested or required to effectuate the purpose or provisions of this Trust Agreement or to confirm or perfect any transaction described or contemplated herein.

**Section 7.02. Amendment.**

(a)     Subject to the remainder of this Section, this Trust Agreement or the Conveyed Documents may be amended, the Conveyed Property may be modified and any Security Interest may be terminated or modified at any time without the consent of the Trustee, any Owner or any other Person and the Trustee shall execute and deliver any such amendment:

(i)     at the direction of Capmark Capital or its designee in any manner that Capmark Capital or its designee determines is reasonably necessary or appropriate to close and fund Additional Permitted Indebtedness pursuant to Section 10.25 of the Loan Agreement;

(ii)     at the direction of the Person entitled to exercise the rights of the Senior Lender with respect to the Loan (the "Applicable Party") for any of the following purposes:

(A)     to cure any ambiguity;

(B)     to correct any error;

(C)     to make any provision of this Trust Agreement consistent with any other provision of this Trust Agreement or to make any provision of any Conveyed Document consistent with any other provision of such Conveyed Document or any other Conveyed Document;

(D)     to amend, modify, eliminate or add to any of the provisions of this Trust Agreement or any Conveyed Document to the extent necessary or desirable to maintain the qualification of the trust as a grantor trust under the Grantor Trust Provisions;

(E)     to amend, modify, eliminate or add any provision of or to this Trust Agreement to provide for or relating to a Book-Entry registration system for the Certificates; or

(F)     for any other purpose that does not materially adversely affect the interests of any Owner.

(b)     Subject to the remainder of this Section, this Trust Agreement and any Conveyed Document may be amended, the Conveyed Property may be modified and any Security Interest may be terminated or modified for any purpose at any time by the Applicable Party and the Trustee, with the consent of a Majority of Owners.

(c)    No amendment of this Trust Agreement or any of the Conveyed Documents, no modification of the Conveyed Property and no termination or modification of any Security Interest pursuant to this Section shall be effective without the consent of all of the Owners of the affected Certificates if such action:

(i)    reduces the aggregate principal, aggregate interest or aggregate Prepayment Amount payable to the Registered Holders with respect to the Loan (or portion thereof from which payments on such Certificates are derived);

(ii)    changes the terms on which the Loan (or portion thereof from which payments on such Certificates are derived) may be prepaid;

(iii)    changes any date on which any amount payable on the Loan (or portion thereof from which payments on such Certificates are derived) to the Registered Holders is due; or

(iv)    amends the Conveyed Documents, modifies the Conveyed Property or terminates or modifies any Security Interest in any manner that (A) materially reduces the aggregate value of all Security Interests; (B) materially reduces the aggregate value of the Conveyed Property; or (C) materially adversely affects the rights of the Owners with respect to the Conveyed Property; provided that no such consent shall be required in connection with issuance of Additional Permitted Indebtedness and the amendment of this Trust Agreement or any Conveyed Document, the modification of the Conveyed Property or the termination or amendment of any Security Interest in connection with the issuance of Additional Permitted Indebtedness issued in accordance with the Loan Agreement.

(d)    Without the consent of the Credit Enhancer, no amendment, modification or termination pursuant to this Section, shall modify the rights of the Credit Enhancer hereunder or affect any change to the Loan Documents not consented to in writing by the Credit Enhancer.

(e)    Without the consent of the Servicer, no amendment, modification or termination pursuant to this Section shall modify the rights of the Servicer hereunder.

(f)    Without the consent of all the Owners, the Credit Enhancer and the Servicer, no amendment, modification or termination pursuant to this Section shall amend this Section.

(g)    No amendment, modification or termination pursuant to this Section shall become effective until the Grantor Trustee has received an Opinion of Counsel nationally recognized as competent in matters relating to the federal income taxation of trust arrangements such as those created hereunder to the effect that such amendment, modification or termination will not result in an Adverse Trust Event. The cost of any Opinion of Counsel to be delivered pursuant to this Section shall be borne by the Person seeking the related amendment, modification or termination, except that if the Grantor Trustee requests any amendment of this Trust Agreement in furtherance of the rights and

interests of Owners, the cost of any Opinion of Counsel required in connection therewith pursuant to this Section shall be payable pursuant to Section 6.05 hereof.

(h)    It shall not be necessary for the consent of Owners pursuant to this Section to approve the particular form of any proposed amendment, modification or termination pursuant to this Section, but it shall be sufficient if such consent shall approve the substance thereof. The manner of obtaining such consents (and any other consents of Owners provided for in this Trust Agreement) and of evidencing the authorization of the execution thereof by Owners shall be subject to such reasonable requirements as the Grantor Trustee may prescribe.

(i)    The Grantor Trustee may, but shall not be obligated to, enter into any amendment to this Trust Agreement or any Conveyed Documents or consent to or take any other action necessary or convenient in connection with any modification of the Conveyed Property or termination or modification of any Security Interest pursuant to this Section that limits or alters its rights or immunities, or materially expands its duties or liabilities, under this Trust Agreement or otherwise. The Grantor Trustee shall be entitled to request and receive, and to rely upon, an Opinion of Counsel (at the expense of the Person seeking the amendment or otherwise treated as an expense payable under Section 6.05 hereof) to the effect such Amendment is permitted or authorized by this Trust Agreement.

**Section 7.03. Severability of Provisions**.   If any one or more of the covenants, agreements, provisions or terms of this Trust Agreement shall be for any reason whatsoever held invalid, then such covenants, agreements, provisions or terms shall be deemed severable from the remaining covenants, agreements, provisions or terms of this Trust Agreement and shall in no way affect the validity or enforceability of the other provisions of this Trust Agreement or of the Certificates, the Book-Entry Beneficial Interests or the rights of any Owner.

**Section 7.04. Notices**.   All notices, demands, certificates, requests and communications hereunder shall be in writing and shall be effective (a) upon receipt when sent through the U.S. mail, registered or certified mail, return receipt requested, postage prepaid with such receipt to be effective the date of delivery indicated on the return receipt, (b) one business day after delivery to an overnight courier, (c) on the date personally delivered to an Authorized Officer of the party to which sent, or (d) on the date transmitted by legible facsimile transmission with a confirmation of receipt, in all cases addressed to the recipient as following:

| if to the Grantor Trustee: | U.S. Bank National Association<br>1420 Fifth Avenue, 7th Floor<br>Seattle, WA 98101<br>Attention: Corporate Trust Services<br>Telephone: (206) 344-4676<br>Facsimile: (206) 344-4632 |
|---|---|
| if to Registrar: | U.S. Bank National Association<br>60 Livingston Avenue<br>St. Paul, MN 55107 |
| if to the Depositor: | Capmark Capital Inc.<br>1801 California Street, Suite 3900<br>Denver, CO 80202<br>Attention: Dan Ray<br>Telephone: (303) 294-3152<br>Facsimile: (303) 296-6804 |
| if to Credit Enhancer: | Ambac Assurance Corporation<br>One State Street Plaza<br>New York, NY 10004<br>Attention: Surveillance Department (and if the<br>notice relates to an Event of Default under the Loan<br>Documents, General Counsel)<br>Telephone: (800) 221-1854<br>Facsimile: (212) 208-3511 |
| if to Servicer: | Capmark Finance Inc.<br>100 South Wacker Drive, Suite 400<br>Chicago, IL 60606<br>Attention: Construction Lending<br>Telephone: (312) 845-8500<br>Facsimile: (312) 845-8623 |

A copy of each notice given hereunder to any party hereto shall also be given to all parties hereunder. Each party hereto may, by notice given in accordance herewith to each of the other parties hereto, designate any further or different address to which subsequent notices shall be sent.

**Section 7.05. Term of Trust Agreement.**

(a)     This Trust Agreement shall take effect on the date first above written and all obligations of the parties hereunder shall cease and terminate on the date following the earlier of (i) the receipt by the Grantor Trustee of a written instruction to terminate the Trust Agreement signed by each Owner or (ii) the date following (A) full payment, satisfaction or discharge of the Loan and all other amounts due and owing under the Loan Documents and the Servicing Agreement, as certified in writing to the Grantor Trustee by

the Servicer and (B) the distribution by the Grantor Trustee of the last amount distributable with respect to the Trust Estate held by the Grantor Trustee; provided, however, that in no event shall the trust arrangement created hereunder continue beyond the expiration of 21 years from the date of death of the last surviving descendant of Joseph P. Kennedy, the late ambassador of the United States to the Court of St. James, living on the date hereof. Upon termination of this Trust Agreement, the remainder of the Trust Estate, if any, then held hereunder and not to be used or applied in discharge of any obligations of the Trust Estate, or any Owner under this Trust Agreement, shall be distributed to the Registered Holders pro rata in proportion to their respective Percentage Principal Ownership Interests.

(b)     Notice of any termination, specifying the date on which final distribution of the Trust Estate will be made and upon which the Registered Holders may surrender their Certificates to the Grantor Trustee for payment of the final distribution and cancellation, shall be given by the Grantor Trustee, such final distribution to be made a Registered Holder only upon presentation and surrender of the Registered Holder's Certificates at the office or agency of the Registrar specified in such notice.

(c)     In the event that a Registered Holder shall not have surrendered its Certificates for cancellation within six months after the time specified in the above-mentioned written notice, the Grantor Trustee shall give a second written notice to such Registered Holder to surrender its Certificates for cancellation and receive the final distribution with respect thereto.   If within six months after the second notice, a Registered Holder shall not have surrendered its Certificates for cancellation, the Grantor Trustee may take appropriate steps, or may appoint an agent to take appropriate steps, to contact all such Registered Holders concerning surrender of their Certificates and the cost thereof shall be distributed out of the funds and other assets which remain subject hereto. To the extent permitted by applicable law, if within nine months after the second notice, a Registered Holder shall not have surrendered its Certificates for cancellation, the Registered Holders previously surrendering their Certificates shall be entitled to all unclaimed funds and other assets which remain subject hereto and the Grantor Trustee, upon transfer of such funds, shall be discharged of any responsibility for such funds and the Registered Holders shall look to the Registered Holders receiving such funds for payment.

**Section 7.06. Nature of Interest in Trust Estate: Limitations on Rights of Others.** No Owner shall have legal title to any part of the Trust Estate and shall only be entitled to receive distributions with respect to its respective Certificates or Book-Entry Beneficial Interests pursuant to this Trust Agreement.  No transfer, by operation of law or otherwise, of any right, title and interest of any Owner, in, to and under its Certificates or Book-Entry Beneficial Interests, shall operate to terminate this Trust Agreement or the trust arrangement created hereunder or entitle any transferee to an accounting or to take any action or proceeding in any court for a partition or winding-up of the Trust Estate, or otherwise affect the rights, obligations and liabilities of the parties hereto.

**Section 7.07.  Disclaimers.**

(a)     None of the Depositor, the Grantor Trustee or any Owner makes any representation, warranty, covenant or agreement, other than those set forth in this Trust Agreement with respect to (i) the due authorization, execution, delivery, validity, legality, sufficiency or enforceability of the Conveyed Documents; (ii) the accuracy of any information, statements or certificates provided to the Grantor Trustee or any Owner in connection with the Trust Estate or the Conveyed Documents; (iii) the filing or recording of any document; (iv) the collectability of the Loan the sufficiency of the Trust Estate, or the existence, title or condition of any Mortgaged Property; or (v) the financial condition or solvency of, or any other matter with respect to the Borrower, the Credit Enhancer, the Servicer or any other Person.

(b)     Each Owner hereby acknowledges that none of the Depositor, the Grantor Trustee or any other Owner has made any representations or warranties with respect to the Trust Estate, the Certificates or the Book-Entry Beneficial Interests except as expressly set forth herein, and that each Owner assumes all risk of loss in connection with its Certificates or Book-Entry Beneficial Interest.  Except to the extent of the Grantor Trustee's agreement to undertake certain filing actions set forth herein, the Grantor Trustee has no responsibility for the perfection or priority of any security interest or lien granted to it hereunder or under the Conveyed Documents; provided the Grantor Trustee shall not take any action to impair any security interest or lien of the Lender (except as may be directed by Capmark Capital pursuant to Capmark Capital's rights under the Loan Documents or as set forth in Section 7.05 hereof) without the Credit Enhancer's consent during any period in which the Credit Enhancer is deemed the Lender for the purposes set forth in Section 2.01(o) of the Credit Enhancement Agreement, and shall take such reasonable actions to maintain the perfection and priority of such security interests and liens as may be directed in writing by the Owners or the Credit Enhancer (in each case, subject to the Grantor Trustee's rights of indemnification set forth or described herein).

(c)     Each Owner hereby acknowledges that the Depositor has no obligation to furnish to any Owner or transferee thereof any information concerning the Borrower, the Credit Enhancer, the Lender, the Servicer or any other Person in connection with the sale, purchase or transfer of any Certificates or Book-Entry Beneficial Interest.

**Section 7.08.  Obligations Unconditional.**  This Trust Agreement shall be a continuing agreement in every respect and shall remain in full force and effect until it is terminated pursuant to Section 7.05 hereof.  Except as otherwise expressly stated in this Trust Agreement, the Depositor, the Grantor Trustee and the Owners agree that their respective obligations under this Trust Agreement are, and at all times and in all events shall be, absolute, irrevocable and unconditional and shall not be affected by any intervening circumstances, any act or omission on the part of any party hereto, or by any of the following:

(a)     any modification or amendment of, or any consent, waiver, release or forbearance in connection with the Conveyed Documents made in accordance with this Trust Agreement with respect to any of the terms of any Conveyed Document or any

other agreement, instrument or document referred to in, or executed and delivered pursuant to any Conveyed Document; or

(b)     any act or omission of any kind by the Depositor, the Grantor Trustee, the Servicer, the Borrower, the Lender, the Credit Enhancer, any Owner or any other Person; or

(c)     any set-off, counterclaim or defense to payment which the Borrower may have against the Depositor, the Grantor Trustee, the Servicer, the Lender, the Credit Enhancer, any Owner or any other Person; or

(d)     any change of any kind whatsoever in the financial position or creditworthiness of the Depositor, the Grantor Trustee, the Servicer, the Borrower, the Lender, the Credit Enhancer, any Owner or any other Person.

**Section 7.09. Entire Agreement.** This Trust Agreement contains all agreements among the parties with respect to the subject matter hereof, and there are no other representations, warranties, promises, agreements or understandings, oral, written or implied, among the parties.

**Section 7.10. Conflict With Other Agreements.**   This Trust Agreement contains additional terms and conditions relating to the administration of the Loan and the Conveyed Documents. In the event of any conflict between the provisions of this Trust Agreement and the provisions of the Conveyed Documents, the provisions of this Trust Agreement shall control as between and among the Depositor, the Grantor Trustee and the Owners.

**Section 7.11. No Unintended Third Party Beneficiaries.** This Trust Agreement shall be for the sole and exclusive benefit of Capmark Capital, the Grantor Trustee, the Owners, the Servicer and the Credit Enhancer (subject to the limitations set forth in this Section) and their respective permitted successors, assignees and transferees and nothing in this Trust Agreement expressed or implied is intended or shall be construed to confer upon, or to give to, any other Person, including, without limitation, the Borrower or the Government, any right, remedy or claim under or by reason of this Trust Agreement or any terms hereof.   The intended beneficiaries set forth in the preceding sentence, to the extent they are not parties hereto, shall be deemed third party beneficiaries of this Trust Agreement. Notwithstanding the foregoing, (a) the rights of the Credit Enhancer under this Trust Agreement shall be limited to the rights of the Credit Enhancer specifically set forth in Section 7.20 and elsewhere herein; and (b) the rights of Servicer under this Trust Agreement shall be limited to the rights of the Servicer specifically set forth herein. The right of the Credit Enhancer to exercise its rights as a third party beneficiary hereunder is contingent on the Credit Enhancer recognizing and agreeing to the waiver and acknowledgment of the Credit Enhancer set forth in Sections 2.03(c) and 2.14 hereof.

**Section 7.12. Limitations on Successors, Assigns and Transferees.**

(a)     No Person may succeed to, and no Owner may transfer to any Person, any of such Owner's rights or interest in its Certificates or Book-Entry Beneficial Interest except in accordance with this Trust Agreement.

(b)     The Depositor or the Grantor Trustee may require, as a condition to any transfer of a Certificate or Book-Entry Beneficial Interest, reasonable proof that the conditions set forth in this Trust Agreement with respect to transfer have been satisfied.

**Section 7.13. Binding Effect.** This Trust Agreement shall be binding upon the parties hereto and their respective permitted successors, assignees and transferees, including, without limitation, any United States trustee, any debtor in possession or any trustee appointed by a private party. Any permitted successor, assignee or transferee of any party shall succeed to the rights and obligations of its predecessor, assignor or transferor in the same manner as if it were named in this Trust Agreement in the place of and instead of its predecessor, assignor or transferee as of the date of such succession, assignment or transfer.

**Section 7.14. No Waiver.** No failure or delay on the part of any party hereto in exercising any right, power or remedy of or under any provision of this Trust Agreement shall impair any such right or power or shall be construed to be a waiver thereof, nor shall any single or partial exercise of any such right, power or remedy preclude any other or further exercise thereof or the exercise of any other right, power or remedy hereunder or under applicable law, and any such right power, power or remedy may be exercised from time to time and as often as may be deemed appropriate. In the event any breach or default by any of the parties of or under any provision of this Trust Agreement shall be waived by another party hereto, such waiver shall only be effective if in a writing signed by the party entitled to the benefits of the breached or defaulted provision or obligation, shall not bind any party which has not waived the default or breach, shall be limited to the particular default or breach so waived, shall be effective only in the specific instance and for the specific purpose for which given and shall not be deemed to waive any other default or breach hereunder or constitute a waiver of the same breach on a future occasion, unless otherwise stated in such writing.

**Section 7.15. Remedies Cumulative.** All rights and remedies herein given or granted to any party hereunder are cumulative, nonexclusive and in addition to any and all rights and remedies that may have or may be given by reason of any law, statute, ordinance or otherwise.

**Section 7.16. Governing Law.** This Trust Agreement shall be governed by and construed, and the obligations, rights and remedies of the parties hereunder shall be determined, in accordance with the laws of the State of Colorado (excluding conflict of law rules).

**Section 7.17. Actions by Owners.**

(a)     Any actions required to be taken by the Owners shall, unless otherwise specified herein, be taken with the consent of a Majority of Owners.

(b)     No Owner shall be liable to any other Owner or the Grantor Trustee for its directions or granting or withholding its consent pursuant to this Trust Agreement. No Owner shall have any implied duties to any Person or any obligation to provide or withhold consent or direction under this Trust Agreement. No Owner shall be liable to any other Person in tort or contract for actions or omissions of any other Owner in connection with the Trust Estate or any transaction connected herewith or therewith.

(c)    Each Owner shall bear its own expenses with respect to actions taken or omitted to be taken pursuant to this Trust Agreement or otherwise with respect to the Trust Estate.

**Section 7.18. Counterparts**.  This Trust Agreement may be executed in two or more counterparts by the parties hereto, and each such counterpart shall be considered an original and all such counterparts shall constitute one and the same instrument.  Signatures on this Trust Agreement may be communicated by facsimile transmission and shall be binding upon the parties transmitting the same.  Counterparts with original signatures shall be provided to the other party within seven days of the applicable facsimile transmission; provided, however, that the failure to provide the original counterpart shall have no effect on the validity or the binding nature of the Trust Agreement.  If executed in counterparts, the Trust Agreement shall be effective as if simultaneously executed.

**Section 7.19. Limitation on Rights of Owners**.

(a)    The death or incapacity of an Owner shall not operate to terminate this Trust Agreement or the Trust Estate, nor entitle such Owner's legal representatives or heirs to claim an accounting or to take any action or proceeding in any court for a partition or winding up of the Trust Estate, nor otherwise affect the rights, obligations and liabilities of any of the parties hereto.

(b)    No Owner shall have any right to vote (except as expressly provided herein) or in any manner otherwise control the operation and management of the Trust Estate, or the obligations of the parties hereto, nor shall anything herein set forth, or contained in the terms of the Certificate, be construed so as to constitute the Owner from time to time as partners or members of an association; nor shall any Owner be under any liability to any third person by reason of any action taken by the parties to this Trust Agreement pursuant to any provision hereof.

(c)    No Owner shall have a right by virtue of any provision of this Trust Agreement to institute any suit, action or proceeding in equity or at law upon or under or with respect to this Trust Agreement or the Trust Estate, unless such Owner previously shall have given to the Grantor Trustee a written notice of default and of the continuance thereof, as hereinbefore provided, and shall have made written request to the Grantor Trustee to institute such action, suit or proceeding in its own name as grantor trustee hereunder and shall have offered to the Grantor Trustee such reasonable indemnity as it may require against the costs, expenses and liabilities to be incurred therein or thereby shall have given its written consent, and the Grantor Trustee, for 60 days after its receipt of such notice, request and offer of indemnity, shall have neglected or refused to institute any such action, suit or proceeding.  For the protection and enforcement of the provisions of this Section, each and every Owner and the Grantor Trustee shall be entitled to such relief as can be given either at law or in equity.

**Section 7.20. Certain Rights of the Credit Enhancer**.  The Grantor Trustee hereby acknowledges that the Credit Enhancer has been granted certain rights under the Credit Enhancement Agreement which are hereby incorporated herein by reference.

**Section 7.21.  Forum Selection; Jurisdiction; Venue; Choice of Law.**  The parties acknowledge that there are substantial contacts between the parties and the transactions contemplated herein and the State of Colorado.  For purposes of any action or proceeding arising out of this Trust Agreement, the parties hereto hereby expressly submit to the jurisdiction of all federal and state courts located in the City and County of Denver in the State of Colorado and the parties hereto consent that they may be served with any process or paper by registered mail at the address set forth in Section 7.04 hereof, or by personal service within or without the State of Colorado in accordance with applicable law.  Furthermore, the parties waive and agree not to assert in any such action, suit or proceeding that it is not personally subject to the jurisdiction of such courts, that the action, suit or proceeding is brought in an inconvenient forum or that venue of the action, suit or proceeding is improper.  It is the intent of the parties that all provisions of this Trust Agreement shall be governed by and construed under the laws of the State of Colorado without giving effect to its principles of conflicts of law.

**Section 7.22.  Waiver of Trial by Jury.**  EACH PARTY HERETO HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES THE RIGHT IT MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO ANY AND ALL ISSUES PRESENTED IN ANY ACTION, PROCEEDING, CLAIM OR COUNTERCLAIM BROUGHT BY ANY OF THE PARTIES HERETO AGAINST ANY OTHER PARTY OR ITS SUCCESSORS OR ASSIGNS WITH RESPECT TO ANY MATTER ARISING OUT OF OR IN CONNECTION WITH THIS TRUST AGREEMENT OR ANY DOCUMENT CONTEMPLATED HEREIN OR RELATED HERETO.  THIS WAIVER BY THE PARTIES HERETO OF ANY RIGHTS THEY MAY HAVE TO A TRIAL BY JURY HAS BEEN NEGOTIATED AND IS AN ESSENTIAL ASPECT OF THEIR BARGAIN.  FURTHERMORE, EACH PARTY HERETO HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES THE RIGHT IT MAY HAVE TO SEEK PUNITIVE, CONSEQUENTIAL, SPECIAL AND INDIRECT DAMAGES AGAINST ANY OTHER PARTY HERETO AND ANY OF SUCH OTHER PARTY'S AFFILIATES, MEMBERS, OFFICERS, DIRECTORS OR EMPLOYEES OR ANY OF THEIR RESPECTIVE SUCCESSORS OR ASSIGNS WITH RESPECT TO ANY AND ALL ISSUES PRESENTED IN ANY ACTION, PROCEEDING, CLAIM OR COUNTERCLAIM BROUGHT BY ANY PARTY AGAINST ANY OTHER PARTY OR ITS AFFILIATES, MEMBERS, OFFICERS, DIRECTORS OR EMPLOYEES OR ANY OF THEIR RESPECTIVE SUCCESSORS OR ASSIGNS WITH RESPECT TO ANY MATTER ARISING OUT OF OR IN CONNECTION WITH THIS TRUST AGREEMENT OR ANY DOCUMENT CONTEMPLATED HEREIN OR RELATED HERETO.  THE WAIVER BY THE PARTIES OF ANY RIGHTS THEY MAY HAVE TO SEEK PUNITIVE, CONSEQUENTIAL, SPECIAL AND INDIRECT DAMAGES HAS BEEN NEGOTIATED BY THE PARTIES HERETO AND IS AN ESSENTIAL ASPECT OF THEIR BARGAIN.

# GRANTOR TRUST AGREEMENT

## CAPMARK MILITARY HOUSING TRUST XXXIII

### SIGNATURE PAGE

IN WITNESS WHEREOF, the parties hereto have executed this Trust Agreement as of the date set forth on the first page hereof.

**CAPMARK CAPITAL INC.**, as Depositor

By _____
Dan Ray, Managing Director

**U.S. BANK NATIONAL ASSOCIATION**, as Grantor Trustee

By _____
Name _____
Title _____

[Acknowledgment and Consent]

The undersigned hereby acknowledges and consents to Sections 2.04(e), 7.11 and 7.20 of the foregoing Grantor Trust Agreement.

**AMBAC ASSURANCE CORPORATION**

By _____

Chetan K. Marfatia, Managing Director

[Acknowledgment and Consent]

The undersigned hereby consents to Section 7.11 of the foregoing Grantor Trust Agreement.

**CAPMARK FINANCE INC.**, a California corporation

By _____
Todd Paradis, Senior Vice President

[FORT LEE - GRANTOR TRUST AGREEMENT]

**EXHIBIT A-1**

**FORM OF SERIES 2007A CERTIFICATE**

FORT LEE PROJECT CERTIFICATE
SERIES 2007A
ISSUED UNDER GRANTOR TRUST AGREEMENT OF
CAPMARK MILITARY HOUSING TRUST XXXIII
DATED AS OF AUGUST 31, 2007

evidencing a beneficial ownership interest in a trust estate (the "Trust Estate") consisting primarily of certain beneficial interests in the Conveyed Documents including the Loan Agreement dated as of August 31, 2007 between Capmark Capital Inc., as Lender (together with its successors and assigns, the "Lender"), and Fort Lee Commonwealth Communities, LLC, as Borrower (together with its successors and assigns, the "Borrower"), all as more particularly described in the Grantor Trust Agreement dated as of August 31, 2007 between the Lender as Depositor (the "Depositor") and U.S. Bank National Association not individually but solely as Grantor Trustee ("Grantor Trustee").

| | |
|---|---|
| Rate of Series A Regularly Scheduled Net Interest Payments: 6.014% per annum | Principal Balance of Series A Note represented by this certificate as of the Issue Date: $121,131,000. |
| Issue Date:  August 31, 2007 | Principal Balance of Series A Note evidenced by all Series 2007A Certificates as of the Issue Date:  $121,131,000. |
| First Scheduled Distribution Date:  October 10, 2007 | Trustee:  U.S. Bank National Association |
| Final Distribution Date:  September 10, 2052 | Servicer:  Capmark Finance Inc. |
| Percentage Principal Ownership Interest Series 2007A, evidenced by this Certificate: 100% | |
| CUSIP No. 140689 AA8 | Registered Holder:  Cede & Co., tax identification number 13-2555119 |
| Certificate No. 1 | Certificate Principal Balance:  $121,131,000. |

**THIS CERTIFICATE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), AND HAS NOT BEEN REGISTERED OR QUALIFIED UNDER THE SECURITIES LAWS OF ANY STATE.  ANY RESALE OR TRANSFER OF THIS CERTIFICATE MAY ONLY BE MADE (A) IN ACCORDANCE WITH THE TRUST AGREEMENT REFERRED TO HEREIN AND (B) UNLESS THIS CERTIFICATE IS REGISTERED UNDER THE SECURITIES ACT AND IS REGISTERED OR QUALIFIED UNDER ANY APPLICABLE SECURITIES LAWS OF ANY STATE, ONLY IN A TRANSACTION EXEMPT FROM THE REGISTRATION OR QUALIFICATION REQUIREMENTS OF THE SECURITIES ACT AND SUCH STATE LAWS.**

A-1-1

UNLESS THIS CERTIFICATE IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF THE DEPOSITORY TRUST COMPANY, A NEW YORK CORPORATION ("DTC"), TO U.S. BANK NATIONAL ASSOCIATION, AS GRANTOR TRUSTEE, OR ITS SUCCESSOR AS GRANTOR TRUSTEE OR THE REGISTRAR UNDER THE TRUST AGREEMENT REFERRED TO BELOW FOR REGISTRATION OF TRANSFER, EXCHANGE, OR PAYMENT, AND ANY CERTIFICATE ISSUED IS REGISTERED IN THE NAME OF CEDE & CO. OR IN SUCH OTHER NAME AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC (AND ANY PAYMENT IS MADE TO CEDE & CO. OR TO SUCH OTHER ENTITY AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC), ANY TRANSFER, PLEDGE, OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL INASMUCH AS THE REGISTERED OWNER HEREOF, CEDE & CO., HAS AN INTEREST HEREIN.

THIS CERTIFICATE IS NOT SECURED BY A PLEDGE OF THE FULL FAITH AND CREDIT OF THE UNITED STATES OF AMERICA, THE DEPARTMENT OF DEFENSE, THE GOVERNMENT OR ANY AGENCY THEREOF. THIS CERTIFICATE DOES NOT REPRESENT AN OBLIGATION OF, OR INTEREST IN, CAPMARK CAPITAL INC., CAPMARK FINANCE INC., U.S. BANK NATIONAL ASSOCIATION, THE GOVERNMENT, OR ANY OF THEIR RESPECTIVE AFFILIATES. NONE OF THIS CERTIFICATE, THE LOAN OR THE TRUST ESTATE IS GUARANTEED BY ANY AGENCY OR INSTRUMENTALITY OF THE UNITED STATES OR ANY OTHER PERSON, EXCEPT TO THE EXTENT SET FORTH IN THE GRANTOR TRUST AGREEMENT AND LOAN DOCUMENTS.

FINANCIAL GUARANTY INSURANCE POLICY NO. SF0937BE (THE "CREDIT ENHANCER POLICY") WITH RESPECT TO PAYMENTS DUE FOR REGULARLY SCHEDULED PRINCIPAL PAYMENTS AND REGULARLY SCHEDULED NET INTEREST PAYMENTS (AS DEFINED IN THE WITHIN-MENTIONED TRUST AGREEMENT) ON THE LOAN HAS BEEN ISSUED BY AMBAC ASSURANCE CORPORATION (THE "CREDIT ENHANCER"). THE CREDIT ENHANCER POLICY HAS BEEN DELIVERED TO U.S. BANK NATIONAL ASSOCIATION, AS GRANTOR TRUSTEE UNDER THE WITHIN-MENTIONED TRUST AGREEMENT AND ASSIGNEE OF THE LENDER, AND WILL BE HELD BY SUCH GRANTOR TRUSTEE OR ANY SUCCESSOR GRANTOR TRUSTEE. THE CREDIT ENHANCER POLICY IS ON FILE AND AVAILABLE FOR INSPECTION AT THE PRINCIPAL OFFICE OF THE GRANTOR TRUSTEE AND A COPY THEREOF MAY BE SECURED FROM THE CREDIT ENHANCER OR THE GRANTOR TRUSTEE. ALL PAYMENTS REQUIRED TO BE MADE UNDER THE CREDIT ENHANCER POLICY SHALL BE MADE IN ACCORDANCE WITH THE PROVISIONS THEREOF. THE OWNER OF THIS CERTIFICATE ACKNOWLEDGES AND CONSENTS TO THE SUBROGATION RIGHTS OF THE CREDIT ENHANCER AS MORE FULLY SET FORTH IN THE CREDIT ENHANCER POLICY, THE CREDIT ENHANCEMENT AGREEMENT AND THE LOAN AGREEMENT.

A-1-2

**TO THE EXTENT ANY PRINCIPAL IS PAID ON THE LOAN, THE OUTSTANDING CERTIFICATE PRINCIPAL BALANCE HEREOF AT ANY TIME MAY BE LESS THAN THE AMOUNT SHOWN ABOVE.**

This certifies that Registered Holder named above is the owner of the Percentage Principal Ownership Interest Series 2007A evidenced by this certificate in the ownership interest evidenced by all the Series 2007A Certificates in the Trust Estate created pursuant to a Grantor Trust Agreement dated as of August 31, 2007 (the "Trust Agreement") between Capmark Capital Inc., as Depositor, and U.S. Bank National Association, not individually but solely as grantor trustee (the "Grantor Trustee"). To the extent not defined herein, the capitalized terms used herein have the meanings assigned in the Trust Agreement.

Pursuant to the terms of the Trust Agreement, each Series A Regularly Scheduled Net Interest Payment, each Series A Regularly Scheduled Principal Payment and all revenues, receipts and other payments of any kind whatsoever generated by the Trust Estate and received in respect of or relating to the Series A Note, less any amounts required to be paid to the Credit Enhancer or the Servicer therefrom, will be distributed to the Registered Holders of the Series 2007A Certificates as of the applicable Record Date. Such distribution, except as otherwise may be set forth in the Trust Agreement, will be made pro rata to the Registered Holders of the Series 2007A Certificates based on their respective Percentage Principal Ownership Interests Series 2007A except as otherwise set forth in the Trust Agreement. Pursuant to the Loan Agreement and the Servicing Agreement, on each Debt Service Payment Date, payments with respect to the Series A Note are to be made in full prior to the making of any payments with respect to the Series B Note.

All distributions made under the Trust Agreement on any Certificate will be made by the Grantor Trustee by (A) wire transfer of immediately available funds in accordance with complete and accurate wire transfer instructions delivered by such Registered Holder to the Grantor Trustee at least five days prior to the date a payment is made or (B) if no such wire transfer instructions have been delivered to the Grantor Trustee by such date, by check or draft of the Grantor Trustee mailed to the Registered Holder thereof at his address as it appears on the Registration Books as of the most recent Record Date. The Servicer has been directed to wire transfer directly to DTC on behalf of the Book-Entry Beneficial Owners all amounts held by the Servicer payable to the Lender with respect to the Conveyed Property when such amounts are due to the Lender under the Loan Documents and the Servicing Agreement.

Any distribution to the Registered Holder of this certificate in reduction of the Certificate Principal Balance stated above is binding on such Registered Holder and all future holders of this certificate and any Certificate issued upon the transfer hereof or in exchange herefor or in lieu hereof whether or not notation of such distribution is made upon this certificate.

The Certificates are limited in right of distribution to certain collections and recoveries respecting the Trust Estate, all as more specifically set forth herein and in the Trust Agreement.

The Certificates are issuable in fully registered form only in the denominations specified in the Trust Agreement. As provided in the Trust Agreement and subject to certain limitations therein set forth, the Series 2007A Certificates are exchangeable for new Series 2007A

A-1-3

Certificates in authorized denominations evidencing the same aggregate Percentage Principal Ownership Interest Series 2007A, as requested by the registered holder surrendering the same.

As provided in the Trust Agreement and subject to certain limitations therein set forth, the transfer of this certificate is registrable in the Registration Books upon surrender of this certificate for registration of transfer at the offices of the Registrar accompanied by a written instrument of transfer in form satisfactory to the Grantor Trustee and duly executed by, the Registered Holder hereof or his attorney duly authorized in writing, and thereupon one or more new Series 2007A Certificates in authorized denominations of a like aggregate amount and Percentage Principal Ownership Interest Series 2007A will be issued to the designated transferee or transferees.

No service charge will be imposed for any registration of transfer or exchange of Certificates, but the Grantor Trustee may require payment of a sum sufficient to cover any tax or other governmental charge that may be imposed in connection with any transfer or exchange of Certificates.

The transfer of this certificate is subject to certain restrictions set forth in the Trust Agreement. No purported transfer of any interest in any Certificate or any portion thereof or interest therein that is not made in accordance with the Trust Agreement shall be given effect by or be binding upon the Grantor Trustee or the Depositor and any such purported transfer shall be null and void *ab initio* and vest in the transferee no rights against the Grantor Trustee, the Depositor or the Trust Estate.

Notwithstanding the foregoing, for so long as this certificate is registered in the name of Cede & Co. or in such other name as is requested by an authorized representative of DTC, transfers of interests in this Certificate shall be made through the book entry facilities of DTC.

Except as otherwise expressly provided in the Trust Agreement with respect to Record Dates, the Person in whose name a Certificate is registered in the Registration Books shall be deemed and regarded as the absolute owner the Certificate for all payments to be made to the registered holders thereof pursuant to the Trust Agreement, for the delivery of all notices, filings, other communications and information to be delivered to the registered holders under any provision hereof and for all other purposes, except as described below, and none of the Depositor, the Grantor Trustee, the Registrar, the Credit Enhancer or any agent of any of them shall be affected by notice to the contrary.

All obligations of the parties under the Trust Agreement shall cease and terminate on the date following the earlier of (i) the receipt by the Grantor Trustee of a written instruction to terminate the Trust Agreement signed by each Owner or (ii) the date following (A) full payment, satisfaction or discharge of the Loan and all other amounts due and owing under the Loan Documents and the Servicing Agreement, as certified in writing to the Grantor Trustee by the Servicer and (B) the distribution by the Grantor Trustee of the last amount distributable with respect to the Trust Estate held by the Grantor Trustee; provided, however, that in no event shall the trust arrangement created under the Trust Agreement continue beyond the expiration of 21 years from the date of death of the last surviving descendant of Joseph P. Kennedy, the late ambassador of the United States to the Court of St. James, living on the date hereof. Upon

A-1-4

termination of this Trust Agreement, the remainder of the Trust Estate, if any, then held hereunder and not to be used or applied in discharge of any obligations of the Trust Estate, or any Owner under this Trust Agreement, shall be distributed to the registered holders of the Certificates pro rata in proportion to their respective Percentage Principal Ownership Interests.

The Trust Agreement permits, with certain exceptions therein provided, the amendment thereof, without the consent of the Owners.

The Credit Enhancement Agreement grants certain rights to Credit Enhancer with respect to the Loan and certain additional rights have been granted to Credit Enhancer pursuant to the Trust Agreement.

This certificate is one of a duly authorized issue of Certificates created by the Trust Agreement. Unless the certificate of authentication hereon has been executed by the Grantor Trustee, by manual signature, this certificate shall not be entitled to any benefit under the Trust Agreement or be valid for any purpose.

The Registered Holder, by its acceptance of this certificate, agrees that it will look solely to the Trust Estate, including the Credit Enhancer Policy, for payment and that the Grantor Trustee is not liable to the Registered Holder hereof or any other registered holder of any Certificate for any amount distributable under this certificate or the Trust Agreement, except as expressly provided in the Trust Agreement.

The Trust Agreement is governed by and construed, and the obligations, rights and remedies of the parties shall be determined, in accordance with the laws of the State of Colorado (excluding conflict of law rules).

This certificate does not purport to summarize the Trust Agreement and reference is made to the Trust Agreement for the interests, rights and limitations of rights, benefits, obligations and duties evidenced thereby, and the rights, duties and immunities of the Grantor Trustee.

This certificate is issued pursuant to and is subject to all the terms of the Trust Agreement, which describes the rights and obligation of each Registered Holder and Owner and by which each Registered Holder and Owner, by virtue of its acceptance of this certificate or beneficial interest therein, assents to and agrees to be bound.

***THE TRUST AGREEMENT CONSTITUTES THE CONTRACT GOVERNING THE RIGHTS AND OBLIGATIONS OF THE REGISTERED HOLDERS AND THE OWNERS. THIS CERTIFICATE IS ONLY EVIDENCE OF SUCH CONTRACT AND, AS SUCH, IS SUBJECT IN ALL RESPECT SO THE TERMS OF THE TRUST AGREEMENT, WHICH SUPERSEDES ANY INCONSISTENT STATEMENTS IN THIS CERTIFICATE.***

The recitals contained herein, except for the certificate of authentication, shall not be taken as statements of the Grantor Trustee and the Grantor Trustee assumes no responsibility for their correctness. The Certificate Trustee makes no representation as to the validity or sufficiency of this Certificate, the Trust Agreement or the Trust Estate. This Certificate is executed and delivered by U.S. Bank National Association ("U.S. Bank") solely in its capacity as Grantor

A-1-5

Trustee under the Trust Agreement and not in its individual capacity. Amounts payable under this Certificate are payable solely from the Trust Estate (to the extent of amounts payable under or allocable to the Series A Note) conveyed to the Grantor Trustee under, and in accordance with the terms of, the Trust Agreement. This Certificate is neither an obligation of nor is it guaranteed by U.S. Bank.

WHEREOF, the Grantor Trustee has caused this certificate to be duly executed.

U.S. BANK NATIONAL ASSOCIATION, not individually but solely as Grantor Trustee

By _____
    Authorized Officer/Authorized Signer

## CERTIFICATE OF AUTHENTICATION

This certificate is one of the Certificates referred to in the within mentioned Trust Agreement.

Dated: _____ \_\_\_, 2007.

U.S. BANK NATIONAL ASSOCIATION, as Registrar

By _____
    Authorized Officer/Authorized Signer

A-1-6

## ASSIGNMENT

FOR VALUE RECEIVED, the undersigned hereby sell(s), assign(s) and transfer(s) unto

_____

_____

(please print or typewrite name and address including postal zip code of assignee)

the beneficial ownership interest in the Trust Estate evidenced by the within Certificate and hereby authorize(s) the registration of transfer of such interest to the above named assignee on the Registration books of the Trust Estate.

I (we) further direct the issuance of a new Series 2007A Certificate of a like authorized denomination evidencing the same aggregate amount and Percentage Principal Ownership Interest Series 2007A to the above named assignee and delivery of such Certificate to the following address:

_____

_____

_____

Dated: _____ ___, _____

_____

Signature by or on behalf of Assignor

_____

Signature Guaranteed

## DISTRIBUTION INSTRUCTIONS

The assignee should include the following for purposes of distribution:

Distributions shall, if permitted, be made by wire transfer or otherwise, in immediately available funds, to _____

for the account of _____

Distributions made by check (such check to be made payable to _____)

and all applicable statements and notices should be mailed to _____

This information is provided by _____, the assignee named above, or _____, as its agent.

A-1-7

**EXHIBIT A-2**

**FORM OF SERIES 2007B CERTIFICATE**

FORT LEE PROJECT CERTIFICATE
SERIES 2007B
ISSUED UNDER GRANTOR TRUST AGREEMENT OF
CAPMARK MILITARY HOUSING TRUST XXXIII
DATED AS OF AUGUST 31, 2007

evidencing a beneficial ownership interest in a trust estate (the "Trust Estate") consisting primarily of certain beneficial interests in the Conveyed Documents including the Loan Agreement dated as of August 31, 2007 between Capmark Capital Inc., as Lender (together with its successors and assigns, the "Lender"), and Fort Lee Commonwealth Communities, LLC, as Borrower (together with its successors and assigns, the "Borrower"), all as more particularly described in the Grantor Trust Agreement dated as of August 31, 2007 between the Lender as Depositor (the "Depositor") and U.S. Bank National Association not individually but solely as Grantor Trustee ("Grantor Trustee").

| | |
|---|---|
| Rate of Series B Regularly Scheduled Net Interest Payments:  6.210% per annum | Principal Balance of Series B Note represented by this certificate as of the Issue Date: $5,217,000. |
| Issue Date:  August 31, 2007 | Principal Balance of Series B Note evidenced by all Series 2007B Certificates as of the Issue Date:  $5,217,000. |
| First Scheduled Distribution Date:  October 10, 2007 | Trustee:  U.S. Bank National Association |
| Final Distribution Date:  September 10, 2052 | Servicer:  Capmark Finance Inc. |
| Percentage Principal Ownership Interest Series 2007B evidenced by this Certificate: 100% | |
| CUSIP No. 140689 AB6 | Registered Holder:  Cede & Co., tax identification number 13-2555119 |
| Certificate No. 1 | Certificate Principal Balance:  $5,217,000. |

**THIS CERTIFICATE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), AND HAS NOT BEEN REGISTERED OR QUALIFIED UNDER THE SECURITIES LAWS OF ANY STATE.  ANY RESALE OR TRANSFER OF THIS CERTIFICATE MAY ONLY BE MADE (A) IN ACCORDANCE WITH THE TRUST AGREEMENT REFERRED TO HEREIN AND (B) UNLESS THIS CERTIFICATE IS REGISTERED UNDER THE SECURITIES ACT AND IS REGISTERED OR QUALIFIED UNDER ANY APPLICABLE SECURITIES LAWS OF ANY STATE, ONLY IN A TRANSACTION EXEMPT FROM THE REGISTRATION OR QUALIFICATION REQUIREMENTS OF THE SECURITIES ACT AND SUCH STATE LAWS.**

A-2-1

UNLESS THIS CERTIFICATE IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF THE DEPOSITORY TRUST COMPANY, A NEW YORK CORPORATION ("DTC"), TO U.S. BANK NATIONAL ASSOCIATION, AS GRANTOR TRUSTEE, OR ITS SUCCESSOR AS GRANTOR TRUSTEE OR THE REGISTRAR UNDER THE TRUST AGREEMENT REFERRED TO BELOW FOR REGISTRATION OF TRANSFER, EXCHANGE, OR PAYMENT, AND ANY CERTIFICATE ISSUED IS REGISTERED IN THE NAME OF CEDE & CO. OR IN SUCH OTHER NAME AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC (AND ANY PAYMENT IS MADE TO CEDE & CO. OR TO SUCH OTHER ENTITY AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC), ANY TRANSFER, PLEDGE, OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL INASMUCH AS THE REGISTERED OWNER HEREOF, CEDE & CO., HAS AN INTEREST HEREIN.

THIS CERTIFICATE IS NOT SECURED BY A PLEDGE OF THE FULL FAITH AND CREDIT OF THE UNITED STATES OF AMERICA, THE DEPARTMENT OF DEFENSE, THE GOVERNMENT OR ANY AGENCY THEREOF. THIS CERTIFICATE DOES NOT REPRESENT AN OBLIGATION OF, OR INTEREST IN, CAPMARK CAPITAL INC., CAPMARK FINANCE INC., U.S. BANK NATIONAL ASSOCIATION, THE GOVERNMENT, OR ANY OF THEIR RESPECTIVE AFFILIATES. NONE OF THIS CERTIFICATE, THE LOAN OR THE TRUST ESTATE IS GUARANTEED BY ANY AGENCY OR INSTRUMENTALITY OF THE UNITED STATES OR ANY OTHER PERSON, EXCEPT TO THE EXTENT SET FORTH IN THE GRANTOR TRUST AGREEMENT AND LOAN DOCUMENTS.

FINANCIAL GUARANTY INSURANCE POLICY NO. SF0937BE (THE "CREDIT ENHANCER POLICY") WITH RESPECT TO PAYMENTS DUE FOR REGULARLY SCHEDULED PRINCIPAL PAYMENTS AND REGULARLY SCHEDULED NET INTEREST PAYMENTS (AS DEFINED IN THE WITHIN-MENTIONED TRUST AGREEMENT) ON THE LOAN HAS BEEN ISSUED BY AMBAC ASSURANCE CORPORATION (THE "CREDIT ENHANCER"). THE CREDIT ENHANCER POLICY HAS BEEN DELIVERED TO U.S. BANK NATIONAL ASSOCIATION, AS GRANTOR TRUSTEE UNDER THE WITHIN-MENTIONED TRUST AGREEMENT AND ASSIGNEE OF THE LENDER, AND WILL BE HELD BY SUCH GRANTOR TRUSTEE OR ANY SUCCESSOR GRANTOR TRUSTEE. THE CREDIT ENHANCER POLICY IS ON FILE AND AVAILABLE FOR INSPECTION AT THE PRINCIPAL OFFICE OF THE GRANTOR TRUSTEE AND A COPY THEREOF MAY BE SECURED FROM THE CREDIT ENHANCER OR THE GRANTOR TRUSTEE. ALL PAYMENTS REQUIRED TO BE MADE UNDER THE CREDIT ENHANCER POLICY SHALL BE MADE IN ACCORDANCE WITH THE PROVISIONS THEREOF. THE OWNER OF THIS CERTIFICATE ACKNOWLEDGES AND CONSENTS TO THE SUBROGATION RIGHTS OF THE CREDIT ENHANCER AS MORE FULLY SET FORTH IN THE CREDIT ENHANCER POLICY, THE CREDIT ENHANCEMENT AGREEMENT AND THE LOAN AGREEMENT.

4848-5123-8657.6

**TO THE EXTENT ANY PRINCIPAL IS PAID ON THE LOAN, THE OUTSTANDING CERTIFICATE PRINCIPAL BALANCE HEREOF AT ANY TIME MAY BE LESS THAN THE AMOUNT SHOWN ABOVE.**

This certifies that Registered Holder named above is the owner of the Percentage Principal Ownership Interest Series 2007B evidenced by this certificate in the ownership interest evidenced by all the Series 2007B Certificates in the Trust Estate created pursuant to a Grantor Trust Agreement dated as of August 31, 2007 (the "Trust Agreement") between Capmark Capital Inc., as Depositor, and U.S. Bank National Association, not individually but solely as grantor trustee (the "Grantor Trustee"). To the extent not defined herein, the capitalized terms used herein have the meanings assigned in the Trust Agreement.

Pursuant to the terms of the Trust Agreement, each Series B Regularly Scheduled Net Interest Payment, each Series B Regularly Scheduled Principal Payment and all revenues, receipts and other payments of any kind whatsoever generated by the Trust Estate and received in respect of or relating to the Series B Note less any amounts required to be paid to the Credit Enhancer or the Servicer therefrom, will be distributed to the Registered Holders of the Series 2007B Certificates as of the applicable Record Date. Such distribution, except as otherwise may be set forth in the Trust Agreement, will be made pro rata to the Registered Holders of the Series 2007B Certificates based on their respective Percentage Principal Ownership Interests Series 2007B except as otherwise set forth in the Trust Agreement. Pursuant to the Loan Agreement and the Servicing Agreement, on each Debt Service Payment Date, payments with respect to the Series A Note are to be made in full prior to the making of any payments with respect to the Series B Note.

All distributions made under the Trust Agreement on any Certificate will be made by the Grantor Trustee by (A) wire transfer of immediately available funds in accordance with complete and accurate wire transfer instructions delivered by such Registered Holder to the Grantor Trustee at least five days prior to the date a payment is made or (B) if no such wire transfer instructions have been delivered to the Grantor Trustee by such date, by check or draft of the Grantor Trustee mailed to the Registered Holder thereof at his address as it appears on the Registration Books as of the most recent Record Date. The Servicer has been directed to wire transfer directly to DTC on behalf of the Book-Entry Beneficial Owners all amounts held by the Servicer payable to the Lender with respect to the Conveyed Property when such amounts are due to the Lender under the Loan Documents and the Servicing Agreement.

Any distribution to the Registered Holder of this certificate in reduction of the Certificate Principal Balance stated above is binding on such Registered Holder and all future holders of this certificate and any Certificate issued upon the transfer hereof or in exchange herefor or in lieu hereof whether or not notation of such distribution is made upon this certificate.

The Certificates are limited in right of distribution to certain collections and recoveries respecting the Trust Estate, all as more specifically set forth herein and in the Trust Agreement.

The Certificates are issuable in fully registered form only in the denominations specified in the Trust Agreement. As provided in the Trust Agreement and subject to certain limitations therein set forth, the Series 2007B Certificates are exchangeable for new Series 2007B

A-2-3

Certificates in authorized denominations evidencing the same aggregate Percentage Principal Ownership Interest Series 2007B, as requested by the registered holder surrendering the same.

As provided in the Trust Agreement and subject to certain limitations therein set forth, the transfer of this certificate is registrable in the Registration Books upon surrender of this certificate for registration of transfer at the offices of the Registrar accompanied by a written instrument of transfer in form satisfactory to the Grantor Trustee and duly executed by, the Registered Holder hereof or his attorney duly authorized in writing, and thereupon one or more new Series 2007B Certificates in authorized denominations of a like aggregate amount and Percentage Principal Ownership Interest Series 2007B will be issued to the designated transferee or transferees.

No service charge will be imposed for any registration of transfer or exchange of Certificates, but the Grantor Trustee may require payment of a sum sufficient to cover any tax or other governmental charge that may be imposed in connection with any transfer or exchange of Certificates.

The transfer of this certificate is subject to certain restrictions set forth in the Trust Agreement.  No purported transfer of any interest in any Certificate or any portion thereof or interest therein that is not made in accordance with the Trust Agreement shall be given effect by or be binding upon the Grantor Trustee or the Depositor and any such purported transfer shall be null and void *ab initio* and vest in the transferee no rights against the Grantor Trustee, the Depositor or the Trust Estate.

Notwithstanding the foregoing, for so long as this certificate is registered in the name of Cede & Co. or in such other name as is requested by an authorized representative of DTC, transfers of interests in this Certificate shall be made through the book entry facilities of DTC.

Except as otherwise expressly provided in the Trust Agreement with respect to Record Dates, the Person in whose name a Certificate is registered in the Registration Books shall be deemed and regarded as the absolute owner the Certificate for all payments to be made to the registered holders thereof pursuant to the Trust Agreement, for the delivery of all notices, filings, other communications and information to be delivered to the registered holders under any provision hereof and for all other purposes, except as described below, and none of the Depositor, the Grantor Trustee, the Registrar, the Credit Enhancer or any agent of any of them shall be affected by notice to the contrary.

All obligations of the parties under the Trust Agreement shall cease and terminate on the date following the earlier of (i) the receipt by the Grantor Trustee of a written instruction to terminate the Trust Agreement signed by each Owner or (ii) the date following (A) full payment, satisfaction or discharge of the Loan and all other amounts due and owing under the Loan Documents and the Servicing Agreement, as certified in writing to the Grantor Trustee by the Servicer and (B) the distribution by the Grantor Trustee of the last amount distributable with respect to the Trust Estate held by the Grantor Trustee; provided, however, that in no event shall the trust arrangement created under the Trust Agreement continue beyond the expiration of 21 years from the date of death of the last surviving descendant of Joseph P. Kennedy, the late ambassador of the United States to the Court of St. James, living on the date hereof.  Upon

4848-5123-8657.6

termination of this Trust Agreement, the remainder of the Trust Estate, if any, then held hereunder and not to be used or applied in discharge of any obligations of the Trust Estate, or any Owner under this Trust Agreement, shall be distributed to the registered holders of the Certificates pro rata in proportion to their respective Percentage Principal Ownership Interests.

The Trust Agreement permits, with certain exceptions therein provided, the amendment thereof, without the consent of the Owners.

The Credit Enhancement Agreement grants certain rights to Credit Enhancer with respect to the Loan and certain additional rights have been granted to Credit Enhancer pursuant to the Trust Agreement.

This certificate is one of a duly authorized issue of Certificates created by the Trust Agreement. Unless the certificate of authentication hereon has been executed by the Grantor Trustee, by manual signature, this certificate shall not be entitled to any benefit under the Trust Agreement or be valid for any purpose.

The Registered Holder, by its acceptance of this certificate, agrees that it will look solely to the Trust Estate, including the Credit Enhancer Policy, for payment and that the Grantor Trustee is not liable to the Registered Holder hereof or any other registered holder of any Certificate for any amount distributable under this certificate or the Trust Agreement, except as expressly provided in the Trust Agreement.

The Trust Agreement is governed by and construed, and the obligations, rights and remedies of the parties shall be determined, in accordance with the laws of the State of Colorado (excluding conflict of law rules).

This certificate does not purport to summarize the Trust Agreement and reference is made to the Trust Agreement for the interests, rights and limitations of rights, benefits, obligations and duties evidenced thereby, and the rights, duties and immunities of the Grantor Trustee.

This certificate is issued pursuant to and is subject to all the terms of the Trust Agreement, which describes the rights and obligation of each Registered Holder and Owner and by which each Registered Holder and Owner, by virtue of its acceptance of this certificate or beneficial interest therein, assents to and agrees to be bound.

*THE TRUST AGREEMENT CONSTITUTES THE CONTRACT GOVERNING THE RIGHTS AND OBLIGATIONS OF THE REGISTERED HOLDERS AND THE OWNERS. THIS CERTIFICATE IS ONLY EVIDENCE OF SUCH CONTRACT AND, AS SUCH, IS SUBJECT IN ALL RESPECT SO THE TERMS OF THE TRUST AGREEMENT, WHICH SUPERSEDES ANY INCONSISTENT STATEMENTS IN THIS CERTIFICATE.*

The recitals contained herein, except for the certificate of authentication, shall not be taken as statements of the Grantor Trustee and the Grantor Trustee assumes no responsibility for their correctness. The Certificate Trustee makes no representation as to the validity or sufficiency of this Certificate, the Trust Agreement or the Trust Estate. This Certificate is executed and delivered by U.S. Bank National Association ("U.S. Bank") solely in its capacity as Grantor

A-2-5

4848-5123-8657.6

Trustee under the Trust Agreement and not in its individual capacity. Amounts payable under this Certificate are payable solely from the Trust Estate (to the extent of amounts payable under or allocable to the Series B Note) conveyed to the Grantor Trustee under, and in accordance with the terms of, the Trust Agreement. This Certificate is neither an obligation of nor is it guaranteed by U.S. Bank.

WHEREOF, the Grantor Trustee has caused this certificate to be duly executed.

U.S. BANK NATIONAL ASSOCIATION, not individually but solely as Grantor Trustee

By _____
    Authorized Officer/Authorized Signer

### CERTIFICATE OF AUTHENTICATION

This certificate is one of the Certificates referred to in the within mentioned Trust Agreement.

Dated: _____ ___, 2007.

U.S. BANK NATIONAL ASSOCIATION, as Registrar

By _____
    Authorized Officer/Authorized Signer

A-2-6

## ASSIGNMENT

FOR VALUE RECEIVED, the undersigned hereby sell(s), assign(s) and transfer(s) unto

_____

_____

_____

(please print or typewrite name and address including postal zip code of assignee)

the beneficial ownership interest in the Trust Estate evidenced by the within Certificate and hereby authorize(s) the registration of transfer of such interest to the above named assignee on the Registration books of the Trust Estate.

I (we) further direct the issuance of a new Series 2007B Certificate of a like authorized denomination evidencing the same aggregate amount and Percentage Principal Ownership Interest Series 2007B to the above named assignee and delivery of such Certificate to the following address:

_____

_____

_____

Dated: _____ __, _____

_____

Signature by or on behalf of Assignor

_____

Signature Guaranteed

## DISTRIBUTION INSTRUCTIONS

The assignee should include the following for purposes of distribution:

Distributions shall, if permitted, be made by wire transfer or otherwise, in immediately available funds, to _____
for the account of _____

Distributions made by check (such check to be made payable to _____)
and all applicable statements and notices should be mailed to _____

This information is provided by _____, the assignee named above, or _____, as its agent.

A-2-7

4848-5123-8657.6